JOURNAL ENTRY AND OPINION
This is an appeal from the judgment of the trial court which, after a jury trial, found Defendant Appellant Michael Chapman ("defendant") guilty of 11 counts of forgery, receiving stolen property, and theft. The defendant was sentenced to one year incarceration for each count, to be served concurrently. For the reasons set forth below, we affirm the judgment of the trial court.
Defendant Chapman was indicted pursuant to an eleven count indictment which charged him with nine counts of forgery in violation of R.C. 2919.31, one count of receiving stolen property in violation of R.C. 2913.51 and one count of theft in violation of R.C. 2913.02. The matter proceeded to a jury trial on March 12, 2001.
At trial, the state presented testimony of Terry Kordiac, owner of Minute Man Plumbing, Heating and Air Conditioner ("Minute Man"). Mr. Kordiac testified that he has owned his business for 20 years and had previous business dealings with the defendant.
While he employed two clerical staff members, Mr. Kordiac testified that he alone was authorized to write checks from his National City business account. He testified that he closely monitored this account and had his statements sent to his home address rather than his place of business.
He testified that in May of 2000, he wrote two checks to the defendant totaling approximately $900 for a sewer machine and electrical supplies related to a job that the defendant was going to complete for Mr. Kordiac at Mr. Kordiac's property on Kinsman Rd. Mr. Kordiac agreed to make both checks payable to Collin Rand after the defendant explained that he did not have a checking account at National City and would be unable to cash the checks. Both checks were cashed without incident. Mr. Kordiac had never met Collin Rand at this time.
A couple of weeks later, Mr. Kordiac noticed that there were problems with his account. He testified that there were nine checks issued to Collin Rand totaling some $7,000 that he did not authorize. Additionally, Mr. Kordiac noticed that several checks were missing from the back of his checkbook. Mr. Kordiac testified that he contacted National City Bank, where a representative confirmed that the nine checks in question contained payor signatures that did not match Mr. Kordiac's signature card on file with the bank.
Mr. Kordiac testified that between late April and mid May, the defendant was in his office on only one or two occasions.
Mr. Kordiac testified that all nine checks in question were stolen, forged and cashed within a two week period and were not used to purchase any supplies for the project that Mr. Kordiac and the defendant had an oral contract.
On cross-examination, Mr. Kordiac testified that one of his clerical staff named Amber left the company shortly after the problems with the account were discovered. He testified that National City advised him that since Amber did not know what had happened, it would be a good idea for her to find new employment.
The state also presented testimony of Collin Rand, to whom all the checks were made payable. Mr. Rand stated that he agreed to cash the checks for the defendant, a relative by marriage, after the defendant explained that he was unable to cash the checks on his own. Mr. Rand stated that he believed the checks were legitimate and issued so that the defendant could purchase supplies for the Kinsman Rd. project on which defendant was working for Mr. Kordiac. Mr. Rand testified that he never saw the defendant complete any work on Kinsman. Mr. Rand admitted that he received a small portion of each check, but stated that it was payment for various work he did for the defendant. When Mr. Rand found out about the problems with Mr. Kordiac, he went to Mr. Kordiac to explain his involvement and volunteered information to a detective working on the case. In exchange for his testimony, all charges against Mr. Rand were dismissed.
The state also presented testimony of Detective Malloy, a 20 year police veteran who has worked in the Financial Crimes Unit for the last three years. Detective Malloy testified that Mr. Rand contacted him about his involvement. At that time, the detective obtained a handwriting exemplar from Mr. Rand. The detective also testified that he obtained a handwriting exemplar from the defendant. The detective also obtained from National City Bank pictures of the people who cashed each check. The detective confirmed Mr. Rand's participation and testified that on May 5, 2000, the defendant accompanied Mr. Rand when Mr. Rand was cashing one of the checks in question.
The results of the handwriting report completed by a detective in the Scientific Investigation Unit revealed that while Mr. Rand endorsed all of the checks in question, no evidence was found to indicate that he wrote any of the writing found on the fronts of the nine checks. The results indicated that the payee line of six of the checks (as stated earlier, made payable to Mr. Rand) may have been written out by the defendant. The detective admitted that more handwriting samples were necessary to confirm that the defendant did in fact write out the checks.
The defense presented testimony of the defendant who admitted to having a extensive felony record. He testified that he was convicted in 1991 for two theft offenses related to a contract, to which he pleaded guilty. He also testified that he was convicted in 1988 which involved a welfare check. He further admitted that he pleaded guilty the morning of this trial to two cases from 1996 and 1988.
The defendant testified that Mr. Kordiac asked him to complete a job for him at his property on Kinsman Rd. The defendant stated that Mr. Kordiac said the job was urgent because there had recently been a fire at the property and the property needed to be re-wired. The defendant testified that he told Mr. Kordiac he would have to look at the property and that he would get back to him. Upon arrival at the property, the defendant realized it was a much bigger job than Mr. Kordiac had guessed. The defendant estimated that the job would cost approximately $32,000 to complete.
The defendant denied that the first two checks issued by Mr. Kordiac were for a sewer machine and electrical supplies. The defendant testified that the checks were issued for supplies related to the electrical job he started on Kinsman.
The defendant testified that despite Mr. Kordiac's contention that Mr. Kordiac was the only person authorized to write checks on his account, the defendant witnessed the secretary sign somewhere between 30-40 checks.[1] The defendant also testified that on one occasion when Mr. Rand was cashing one of the checks in question, he had trouble doing so because the bank wanted to update their signature cards. The defendant testified that he went to the secretary at Minute Man who typed up letterhead with Minute Man on it, signed it and updated the signature on it. The defendant states that he accompanied Mr. Rand back to the bank and handed the letter to the teller.
The defendant testified that all of the checks were cashed and used to purchase supplies. He stated that the supplies are stored at the Kinsman property. He also testified that he never used any of the money from the checks for his personal use. The defendant stated that he saw Mr. Kordiac daily and gave him frequent progress reports on the work being done at the Kinsman property.
The defendant stated that when Mr. Kordiac refused to sign his contract on May 16, 2000, Mr. Kordiac immediately issued a stop payment order on the check and reported the defendant to the police.
The defense provided no other corroborating testimony or evidence and was found guilty. It is from this ruling that the defendant now appeals asserting three assignments of error for our review.
 I. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION, DUE TO THE CUMULATIVE ERRORS OF DEFENSE COUNSEL AT TRIAL.
Defendant contends that he was denied effective assistance of counsel as a result of trial counsel's failure to subpoena various documents and a witness. The defendant argues that had certain documents and other evidence been produced, they would have proved that the defendant was not guilty.
Where the allegation of ineffective assistance of counsel is based on facts dehors the record, the appropriate remedy is a proceeding for post conviction relief. State v. Gibson (1980), 69 Ohio App.2d 91, 23 Ohio Op.3d 130, 430 N.E.2d 954, paragraph three of the syllabus. We are therefore unable to decide this issue on direct appeal.
 II. APPELLANT'S CONVICTIONS FOR THEFT, FORGERY AND RECEIVING STOLEN PROPERTY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, citing Tibbsv. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary, whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. Antill (1964),176 Ohio St.2d 61, 197 N.E.2d 548; State v. DeHaas (1967),10 Ohio St.2d 230, 227 N.E.2d 212.
In the case at hand, the jury was faced with the task of evaluating the credibility of the prosecution's witnesses and the credibility of the defendant, who provided different testimony on almost all of the underlying facts.
Mr. Kordiac testified that he was the only person authorized to write checks on his account, and at no time did he authorize the defendant to write nine checks totaling approximately $7,000. He also testified that several checks had been missing from the back of his checkbook.
There was testimony from Mr. Rand, a work assistant and relative of the defendant through marriage, who stated that he never saw the defendant complete any work at the Kinsman property. There was also a handwriting report that stated that the defendant may have illegally issued the checks.
There is no question that the defendant had possession of the checks and subsequently cashed them through Mr. Rand. While there were questions with regard to whether the checks were stolen and forged or legitimately issued by Mr. Kordiac, the jury determined that they believed the testimony presented by the state. While the defendant denied all of the testimony by the state during direct and cross-examination, the defense failed to present any evidence to the contrary. Therefore, the jury was faced with the task of weighing the reliability and credibility of the testimony presented.
Again, the credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. Antill, supra. We cannot say that the jury lost its way in determining that the defendant, who had a colored felony record for similar offenses, was less credible than the state's witnesses.
In resolving the conflicts in the evidence, we cannot say the trier of fact clearly lost its way or created a manifest miscarriage of justice. Defendant's second assignment of error is without merit.
 III. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN, AFTER THE JURY HAD BEGUN DELIBERATIONS, IT GAVE THE JURY ADDITIONAL INSTRUCTIONS ON THE ISSUE OF COMPLICITY THAT WERE NOT INCLUDED IN THE ORIGINAL CHARGE.
The defendant contends that the trial court committed plain error in issuing additional jury instructions after jury deliberations had begun. The defendant argues that because trial counsel failed to object to the jury instructions, he has waived all but plain error. Additionally, the defendant argues that the court did not have authority to add the charge of complicity after jury deliberations began. We disagree.
Under the waiver doctrine, a reviewing court will not consider errors that counsel did not timely call to the attention of the trial court so that they could have been avoided or corrected at trial. See State v.Peagler (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489. Failure to object waives the issue on appeal unless the error is determined to be plain error pursuant to Crim.R. 52 (B). See State v. Underwood,3 Ohio St.3d at 13. Therefore, the plain error doctrine does not apply where trial counsel properly objected to the issue before the trial court.
In this case, the record reveals that trial counsel did, in fact, object to the charge of complicity in the jury instructions. In fact, the objection was raised at several points in the trial:
 MR. VALENTINE (prosecutor): Your honor, when it comes to jury instructions, there is, we believe an un-indicted co-conspirator essentially on this case. There was another person involved with Mr. Chapman on this day, and we would ask, therefore, for a complicity instruction.
 THE COURT: If the evidence so warrants it, the Court will keep that in mind.
 MR. CORRIGAN (defense counsel): Since the person is not indicted, Judge, I would object to that.
(T. 31)
 THE COURT: * * * You've each been given this morning, two hours ago, copies of the charge. Have each of you reviewed those, and the verdict forms?
MR. VALENTINE: Yes.
MR. CORRIGAN: Yes, your Honor.
THE COURT: Any changes, any corrections, any additions?
* * *
 MR. CORRIGAN: Your Honor, I would object to the instruction on — let me get it here — complicity, in that I don't believe the evidence supports an instruction on complicity. The possible co-defendant was not indicted or even charged in this case.
 THE COURT: There was a co-defendant charged in this case, Mr. Collin Rand. The complicity that * * *.
 MR. CORRIGAN: I believe that the State's position was that there was a third person possibly involved that was not stated, and Mr. Collin Rand's case was actually nolled, and I don't believe the evidence conformed with my client assisting him in any crime. We all agree that Mr. Rand's conduct, to his knowledge, was lawful.
THE COURT: Mr. Valentine.
 MR. VALENTINE: Your Honor, the testimony from Mr. Kordiac was that these checks were stolen, and that the signature on these checks was not his signature. Mr. Rand endorsed it on the back, but did not fill out any part of the front. Somebody filled out the signature on the front. The defendant testified that it was not him, it was another person.
 So, we believe that besides Mr. Rand's degree of complicity here with this defendant, that there was at least one other, if not more than one other person involved in this.
 THE COURT: Okay. Your objection is noted. All right. I will be charging on complicity. Bring out the jury, please.
(T. 150-152)
As a result of these objections, the trial court had ample opportunity to consider whether or not it should include complicity charges in its jury instructions.
We therefore proceed with our review under an abuse of discretion standard. Ohio law is clear that it is within the sound discretion of the trial court to determine whether sufficient evidence was presented to require a jury instruction. State v. Wolons (1984), 44 Ohio St.3d 64,541 N.E.2d 443. This court will not reverse the decision of the trial judge with regard to whether sufficient facts existed to support a jury instruction absent an abuse of discretion. Shumar v. Kopinsky, 2001 Ohio App. LEXIS 3831 (Aug.30, 2001) Cuyahoga App. No. 78875, unreported, citing: State v. Kelly, 2001 Ohio App. Lexis 4124 (July 12, 2001), Cuyahoga App. No. 78422, unreported; State v. Barnd (1993),85 Ohio App.3d 254, 260, 619 N.E.2d 518, 521-522.
The Ohio Supreme Court recently defined the abuse of discretion standard as follows:
 The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing [* * *] considerations. State v. Jenkins
(1984), 15 Ohio St.3d 164, 222, 15 Ohio B. Rep. 311, 361, 473 N.E.2d 264, 313, quoting Spalding v. Spalding (1959), 355 Mich. 382, 384-385, 94 N.W.2d 810, 811-812. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.
Nakoff v. Fairview General Hospital (1996), 75 Ohio St.3d 254, 256-257,662 N.E.2d 1, 3.
In order to support a charge of complicity in jury instructions, there must be some evidence that the defendant "solicited or procured another to commit the offense of those charges in the indictment, or aided or abetted another." The record indicates that there was testimony by Collin Rand to support such a charge. According to Rand's testimony, the defendant solicited Rand's help in cashing the checks. While the evidence supporting the charge is not overwhelming, facts do exist to support such a charge. Therefore, the trial court did not abuse its discretion in submitting complicity instructions to the jury.
With regard to the defendant's contention that the trial court was without the authority to add the complicity charge after the jury deliberation, we find this argument to be without merit.
The trial court's original jury instructions reads, in relevant part:
 THE COURT: * * * All essential elements of these offenses will be defined for you momentarily.
 It is no defense to a charge of complicity that no person with whom the defendant was in complicity has been convicted as a principal offender.
 However, the defendant cannot be found guilty of complicity unless the offenses were actually committed.* * *
(T. 188-189)
When the jury asked for clarification on the charges, the trial court, after discussion with the prosecutor and defense counsel, submitted the following:
 THE COURT: * * * Before you can find the defendant guilty of committing these or any of the crimes * * * you must find that the defendant, A, solicited or procured another to commit the offense of, whether it be forgery or theft or RSP; or aided or abetted another in committing the offense, or any of them; or caused an innocent or irresponsible person to commit the offense, or any of them.
 Remember the court's further instruction that it's no defense to a charge of complicity, that no person with whom the defendant was in complicity actually been convicted of a principal offender.
 However, the defendant cannot be found guilty of complicity unless the offenses were actually committed.
(T.214-215).
Any ambiguity in a selected portion of the instructions does not constitute reversible error unless the instructions, as a whole are so misleading as to prejudicially affect a substantial right of the complaining party. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89,92-93, 652 N.E.2d 671. While the trial court erred in not submitting the complete complicity charge as a part of the original instruction, we find no prejudice under the circumstances. The jury was aware that complicity charges were to be considered based on the instructions they received prior to deliberations. The error by the trial court omitting the actual elements necessary for a complicity charge was therefore harmless.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND MICHAEL J. CORRIGAN, J., CONCUR.
[1] The defendant later testified that he never met the secretary, the woman who allegedly issued the checks to him.