DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. The court found Jason Strickler, defendant below and appellant herein, guilty of vehicular assault in violation of R.C. 2903.08(A)(2)(C)(2).
 {¶ 2} Appellant, through his counsel, assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT VIOLATED MR. STRICKLER'S RIGHTS TO DUE PROCESS, EQUAL PROTECTION, AND THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE OHIO AND U.S. CONSTITUTIONS WHEN IT DENIED HIS MOTION FOR FUNDS TO HIRE AN ACCIDENT RECONSTRUCTION EXPERT TO ASSIST IN THE DEFENSE."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT VIOLATED MR. STRICKLER'S RIGHTS UNDER THESIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTIONS 5, 10, AND 16 OF ARTICLE ONE OF THE OHIO CONSTITUTION WHEN IT SENTENCED MR. STRICKLER TO A PRISON TERM FOR A FOURTH DEGREE FELONY AND WHEN IT IMPOSED MORE THAN THE MINIMUM PRISON TERM BASED UPON FACTUAL FINDINGS WHICH MR. STRICKLER DID NOT ADMIT."
 {¶ 3} Appellant also filed his own pro se brief in which he assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
"THE CONVICTION AND SENTENCE IS VOID PURSUANT [TO] THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES CONSTITUTION."
SECOND ASSIGNMENT OF ERROR:
"THE CONVICTION AND SENTENCE IS VOID PURSUANT [TO] THEFIFTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION."
THIRD ASSIGNMENT OF ERROR:
"THE CONVICTION AND SENTENCE IS VOID PURSUANT [TO] THEFOURTEENTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION, AS THE STATE DID NOT ESTABLISH ALL THE ELEMENTS NECESSARY TO ESTABLISH THE CRIME WITH A NO CONTEST PLEA, THUS A DENIAL OF EQUAL PROTECTION OF THE LAW AND DUE PROCESS OF LAW."
FOURTH ASSIGNMENT OF ERROR:
"THE CONVICTION AND SENTENCE IS VOID PURSUANT [TO] THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
FIFTH ASSIGNMENT OF ERROR:
"THE SENTENCE IMPOSED IS CONTRARY TO OHIO LAW UNDER [STATE V. COMER STATE V. EDMONSON]."
 {¶ 4} In the early morning hours of June 13, 2003, appellant was driving a pickup truck in rural Washington County when he lost control and crashed. Appellant's passenger, Jeremy Edgar, suffered serious injuries that eventually resulted in paralysis. Appellant was unhurt and he walked two miles to get help.
 {¶ 5} Appellant told the officers that the accident occurred as he swerved to avoid hitting another car. However, no physical evidence indicated that another vehicle was involved. Appellant had a suspended operator's license.[2] Appellant also admitted to consuming one can of beer before the accident.
 {¶ 6} The Washington County Grand Jury returned an indictment charging appellant with one count of vehicular assault in violation of R.C. 2903.08(A)(2)(B)(2). He entered a plea of not guilty. On November 24, 2003, appellant filed a motion and requested the trial court to provide him funds to obtain "expert assistance" in accident reconstruction. At the December 12, 2003 hearing appellant testified he had no personal funds to pay an expert. Appellant claimed that the only asset that he and his wife owned is their house valued at $125,000, but mortgaged in the amount of $124,000. When asked by the prosecution and trial court, appellant admitted that he and his wife earn approximately $35,000 to $40,000 per year.[3] Based on that income, and the fact that the appellant has no dependents, the trial court concluded that appellant was not entitled to public funds to hire an expert witness.
 {¶ 7} Subsequently, appellant and the prosecution reached a plea agreement whereby appellant agreed to plead "no contest" in exchange for an amendment of the indictment to charge a violation of R.C. 2903.08(A)(2)(C)(2), rather than subsections (A)(2)(B)(2).[4] After the trial court reviewed the plea agreement, advised appellant of his various rights and heard a recitation of the facts, the trial court accepted appellant's no contest plea, found him guilty and ordered a pre-sentence investigation.
 {¶ 8} At the sentencing hearing, Jeremy Edgar's statement (that detailed the extent of his injuries) was read into the record.[5] The trial court then heard appellant and reviewed the pre-sentence investigation report. At the conclusion of the hearing, the court found that the seriousness factors in this case vastly outweighed the mitigating factors. Specifically, the court noted that appellant had a prior history of drinking and driving offenses. The court further noted that this particular offense occurred while appellant was under a license suspension and "on sanction out of Municipal Court for supervision." The court also opined that it believed appellant lied about the presence of another car on the road that evening and lied about his alcohol intake prior to the accident. Finally, the court noted the severe physical and economic injury appellant inflicted on Jeremy Edgar — an injury that Edgar would have to deal with for the rest of his life. In light of this, the court determined that prison is the most appropriate punishment and sentenced appellant to thirteen months incarceration.
 {¶ 9} This court granted appellant leave to file a delayed appeal and the case is now properly before us for review.
 I {¶ 10} Appellate counsel posits in his first assignment of error that the trial court erred in denying his client funds to secure assistance from an accident reconstruction expert to aid in appellant's defense. We disagree.
 {¶ 11} Our analysis begins with the well settled principle that when a State brings the criminal process to bear on a defendant, it must provide him with the "raw tools" and "basic materials" of an adequate defense and that this may include providing funds to secure assistance from expert witnesses. SeeAke v. Oklahoma (1985), 470 U.S. 68, 77, 84 L.Ed.2d 53,105 S.Ct. 1087; (finding such a requirement in the Due Process Clause of the Fourteenth Amendment); Britt v. North Carolina (1971),404 U.S. 226, 227, 30 L.Ed.2d 400, 92 S.Ct. 431 (finding it in the Equal Protection Clause of the Fourteenth Amendment). Applying those principles, the Ohio Supreme Court has determined that the following standard must be applied when determining whether funds should be afforded a defendant for purposes of securing expert assistance:
Due process, as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."
State v. Mason (1998), 82 Ohio St.3d 144, 694 N.E.2d 932, at the syllabus; also see State v. Nields (2001), 93 Ohio St.3d 6,12, 752 N.E.2d 859.
 {¶ 12} We also note that the Mason and Nields cases focus on the efficacy of state funded expert witnesses. In other words, whether a "reasonable probability" exists that an expert would aid the defense or whether the denial of funds for an expert would render a criminal trial fundamentally unfair. Little case law discusses what appellate counsel characterizes in his brief as the "threshold inquiry" — whether appellant is, in fact, indigent and has no ability to personally pay for such assistance.[6]
 {¶ 13} In State v. Pasqualone (Mar. 31, 1999), Ashtabula App. No. 97-A-0034, the court held that the determination of whether a defendant is indigent and needs state assistance to retain experts is a matter left to the sound discretion of the trial court. Consequently, that decision will not be reversed on appeal absent an abuse of that discretion. Id. In Pasqualone,
our colleagues in the Eleventh District affirmed a trial court's determination that a defendant was not indigent when the defendant failed to provide any extraneous evidence of such indigency (for example, a financial statement) that would tend to substantiate his claim.
 {¶ 14} The same problem presents itself in the case sub judice. Although appellant testified that he had no assets to retain an expert in accident reconstruction, he did not substantiate that claim. With regard to his home, he informed the court that it was worth $125,000,[7] but was mortgaged in the amount of $124,000. He did not, however, introduce any documentation to show the initial amount of the mortgage or what remained due and owing. Appellant introduced no bank statements to show the absence of liquid assets and, as in the Pasqalone
case, introduced no financial statements for the trial court's review.
 {¶ 15} We emphasize that although a defendant is competent to testify as to his own financial situation, a trial court is notipso facto required to accept that testimony. A court operates as trier of fact on this motion and, as in any other proceeding in which facts are to be determined, is free to believe all, part or none of the testimony of any witnesses before it. State v.Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v.Caldwell (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096;State v. Harriston (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144. We are cognizant of the fact that as a trier of fact, a trial court is in a better position than this court to observe a defendant's demeanor, gestures, voice inflections, etc. and to use those observations to weigh credibility. See Myers v.Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. In other words, in the instant case the trial court may simply not have believed appellant's claims that he had no assets to pay for expert assistance. This may be particularly true given that he had no additional evidence to substantiate his indigency claim.
 {¶ 16} The main problem for the trial court appears to have been appellant's income. Appellant admitted that he and his wife made "pretty close" to "35 to $40,000 a year income." Given that they had no dependents to support, the trial court found that this is sufficient income that appellant was not indigent.
 {¶ 17} Appellant counters that the trial court should not have looked to his annual income but, rather, his ability to front the cost of the expert witness. Further, appellant contends that the court did not take into account his expenses but, instead, focused exclusively on his income. We are not persuaded. As noted above, the trial court may simply have not believed appellant's claim that he did not have sufficient assets to hire an accident reconstruction expert. The trial court may also have discounted appellant's claim that he could not borrow against the house, or other assets, or even against future income, to finance the cost of retaining such an expert. As to appellant's expenses, we note that he had the same problem on this issue that he had with the issue of his assets, namely, he did not produce additional proof to substantiate his expenses nor did he provide any kind of financial statement to show his financial condition.
 {¶ 18} Finally, we note that the trial court was not provided with any definitive guidance as to how much this accident reconstruction expert would cost. Trial counsel represented that the fee would be somewhere between $4,000 and $10,000. In light of appellant's annual income of $35,000 to $40,000, we believe that the trial court is justified in believing that appellant could at least come up with the $4,000 base amount.
 {¶ 19} As noted in Pasqualone, and conceded by the parties in their briefs, the standard of review on this issue is whether the court abused its discretion in refusing to provide appellant with funds to retain an expert witness. We note that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 331, 335; State v. Moreland (1990),50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149. In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. See State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732,654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181; Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. To show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Vaught v. Cleveland Clinic Found., 98 Ohio St.3d 485,787 N.E.2d 631, 2003-Ohio-2181, ¶ 13; Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 20} In the instant case, in light of appellant's failure to provide any documentation to support his indigency claim, as well as his own admission that he and his wife earned between $35,000 and $40,000 per year, we find no abuse of discretion by the trial court. In other words, in light of the particular facts and circumstances at issue during the hearing, we do not find that the trial court was arbitrary, unreasonable or unconscionable in concluding that appellant was not indigent and needed funds to retain expert assistance.
 {¶ 21} We parenthetically note that our ruling is buttressed by one other consideration as well. As noted previously, the Ohio Supreme Court has indicated that funds for expert assistance are to be provided only in those instances when a "reasonable probability" exists that the requested expert would aid in his defense and the denial of the requested expert assistance would result in an unfair trial. Mason, supra, at the syllabus;Nields, supra at 12. It does not appear to us that either problem exists here. Even putting aside the fact that the victim (Jeremy Edgar) contradicts appellant's claim that another vehicle caused the accident, we find no indication in the record that an expert could have helped the defense prove that claim. During the course of argument on appellant's motion to provide funds, both sides seemed to indicate that no physical evidence (e.g. skidmarks, etc.) established that another car was on the road that night. The prosecution made the following observations:
"Indeed, Mr. Strickler did say — he said there was another car coming at him. That was his initial statement. But, there is no physical evidence, either skid marks or any other evidence that the Patrol was able to find at the scene, that supports the existence of another car.
Of course, if there was a car, and it didn't slam on its brakes or something, there wouldn't be any evidence.
My question, then, is how can an ex — an accident reconstructionist [sic] recreate this? All he can say is, the car went left and went off the edge of the road, which we all agree is exactly what happened. The presence or nonexistence of another car coming the other way, can't be shown by any of the evidence. So, how could an accident reconstructionist [sic] assist the Defense — or assist in the defense of this case?"
 {¶ 22} We ask the same question. What is the reasonable probability that an expert could assist the defense when the evidence only show that appellant's car went off the side of the road and this is a fact that everyone already knows? In short, we see little that an expert could reconstruct and we fail to see how appellant would have been deprived of a fair trial by not providing public funds for an expert.
 {¶ 23} For all these reasons, we find no merit in appellate counsel's first assignment of error and it is hereby overruled.
 II {¶ 24} Appellate counsel's second assignment of error asserts that in sentencing appellant to thirteen months incarceration, the trial court relied on factors that were neither proven to a jury nor admitted by appellant during the proceedings below. He claims that, under the United States Supreme Court decision inBlakely v. Washington (2004), 542 U.S. ___, 159 L.Ed.2d 403,124 S.Ct. 2531, such sentence violates his client's Constitutional right to a jury trial. We disagree, albeit we recognize the strong argument to the contrary.
 {¶ 25} We held in State v. Scheer, 158 Ohio App.3d 432,816 N.E.2d 602, 2004-Ohio-4792, at ¶ 15, that Blakely does not apply in Ohio. We have adhered to that ruling, see e.g. State v.Sideris, Athens App. No. 04CA37, 2005-Ohio-1055, at ¶ 15; Statev. Wheeler, Washington App. No. 04CA1, 2005-Ohio-479, at ¶ 16, fn. 2 (Entry on Application for Reconsideration and Motion to Certify a Conflict); State v. Hardie, Washington App. No. 04CA24, 2004-Ohio-7277, at ¶¶ 7-9, and continue to do so until the Ohio or United States Supreme Courts come to the opposite conclusion.[8]
 {¶ 26} For this reason, we hereby overrule appellate counsel's second assignment of error.
 III {¶ 27} Appellant argues in his first pro se assignment of error that his conviction violates the Double Jeopardy Clause of the Fifth Amendment because he was previously convicted of several traffic violations resulting from this incident and cannot be found guilty of vehicular assault as well. We note, however, that the traffic offenses appellant talks about are different from R.C. 2903.08 vehicular assault and theFifth Amendment only prohibits "double jeopardy" for the "same offense." Misdemeanor traffic violations are not the same offense as vehicular assault. Appellant's first pro se assignment of error is hereby overruled.
 IV {¶ 28} Appellant's second pro se assignment of error argues that his conviction violates that portion of the Fifth Amendment that guarantees indictment by a grand jury. Admittedly, we cannot understand the convoluted argument appellant offers in his brief. That said, we point out that appellant was (1) properly indicted by the Washington County Grand Jury and (2) nothing improper occurred in amending that indictment — particularly since the amendment reduced the offense from a third degree to a fourth degree felony thereby lessening the punishment appellant could receive.
 {¶ 29} Accordingly, we find no merit in appellant's second pro se assignment of error and it is hereby overruled.
 V {¶ 30} Appellant argues in his third pro se assignment of error that his conviction is void because the prosecution did not prove all the elements necessary to show commission of the offense. This argument fails for several reasons. First, at the January 13, 2004 change of plea hearing, appellant stipulated that a factual basis exists for the crime. This amounts to an admission that the elements of the offense were proven. Second, appellant pled no contest which is also an admission of the truth of the facts alleged in the indictment. See Crim.R. 11(B)(1).
 {¶ 31} Accordingly, appellant's third assignment of error is without merit and is hereby overruled.
 VI {¶ 32} Appellant argues in his fourth pro se assignment of error that the trial court's sentence violates Blakely v.Washington (2004), 542 U.S. ___, 159 L.Ed.2d 403,124 S.Ct. 2531. We rejected that argument in appellate counsel's second assignment of error and do so again here for the same reasons.
 VII {¶ 33} Appellant's fifth pro se assignment of error asserts that his sentence violates State v. Comer 99 Ohio St.3d 463,793 N.E.2d 473, 2003-Ohio-4165, and State v. Edmonson (1999),86 Ohio St.3d 324, 715 N.E.2d 131. Specifically, appellant contends the trial court erred in sentencing him to more than the minimum allowable sentence without first making the R.C.2929.14(B) findings.[9] We disagree.
 {¶ 34} The sentencing hearing transcript explicitly shows that the trial court rejected the "shortest prison term possible" because it "would demean the seriousness of the offense . . . [and] would not protect the public from future crime . . ." Thus, the trial court made the requisite statutory findings to impose more than the minimum sentence.
 {¶ 35} Appellant also argues that even if the trial court did make the required findings, it did not provide an explanation to support those findings. We note, however, that the Ohio Supreme court has held that no such explanation is required. Edmonson,
supra at the syllabus. Moreover, even if an explanation was required, we believe that the trial court was clear in the transcript as to why it imposed a sentence greater than the minimum.
 {¶ 36} The trial court explicitly referred to appellant's problems in complying with traffic laws (which are well documented in the pre-sentence investigation report) as well as the fact that appellant was drinking alcohol on the night of this incident and appears to have been less than completely truthful about the extent of that alcohol consumption. Jeremy Edgar's statement shows that Edgar asked appellant to slow down and to stop being "careless," but appellant did not heed those requests. More important, the court referred to the paralysis that Edgar suffers, the "psychological" harm that was inflicted on him and the "enormous bills" he will have "to pay for the rest of his life." In short, we find that the trial court provided ample reasons to support its determination that a minimum sentence would demean the seriousness of this offense. We find no merit in appellant's fifth pro se assignment of error and it is therefore overruled.
 {¶ 37} Having considered all the errors assigned and argued in the brief filed by appellate counsel and the pro se brief filed by appellant, and after finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment Opinion.
[2] Other witnesses, including a bartender at the "Dockside" in Beaverton, Ohio, related that they observed appellant consume more alcohol than one beer.
[3] Despite this income, appellant explained that his father provided the funds he used to retain private counsel during the trial court proceedings.
[4] The prosecution amended the indictment to remove a specification that the offense occurred while appellant was driving under a license suspension. That reduced the offense from a third degree felony to a fourth degree felony. See R.C.2903.08(B)(2).
[5] Interestingly enough, Edgar's statement made no mention of another car present on the road that evening. In fact, Edgar stated that he and appellant "were riding on County Road 9 . . . where he [appellant] was driving too fast and being careless by sliding around turns." Edgar said that he told appellant "to slow down, but he didn't, and [they] ended up wrecking over an embankment."
[6] Appellate counsel cites several cases that he claims addresses the issue of indigency in context of state funded expert witnesses, e.g. State v. McLean (1993)87 Ohio App.3d 392, 622 N.E.2d 402; State v. Tymcio (1975), 42 Ohio St.2d 39,325 N.E.2d 556. These cases address indigency in the context of appointed counsel which, though certainly a similar issue, is somewhat different from the issue that we are concerned with here.
[7] Appellant testified that the home was "appraised" at that amount, but did not introduce the appraisal to substantiate his testimony.
[8] We acknowledge United States v. Booker (2005), ___ U.S. ___, ___ L.Ed.2d ___, 125 S.Ct. 738 and State v. Bruce,
Hamilton App. No. C-040421, 2005-Ohio-373, the latter submitted by counsel as additional authority on February 9, 2005, continue to call into question the constitutionality of Ohio's Felony Sentencing Laws. For that reason, we urge the Ohio Supreme Court to quickly review this state's sentencing scheme.
[9] R.C. 2929.14(B)(2) requires that when a court imposes a prison sentence on someone who has not previously spent time in prison, the court must impose a minimum sentence unless it finds on the record that the shortest term will demean the seriousness of the offender's conduct or not adequately protect the public from future crime by the offender.