[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 254.]

NAKOFF, APPELLANT, *v.* FAIRVIEW GENERAL HOSPITAL; ESSIG ET AL.,

APPELLEES.

**[Cite as *Nakoff v. Fairview Gen. Hosp.*, 1996-Ohio-159.]**

*Civil procedure—Trial court has broad discretion when imposing discovery sanctions—Reviewing court shall review these rulings only for an abuse of discretion.*

A trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion.

(No. 94-1626—Submitted November 14, 1995—Decided March 6, 1996.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 64224 and 64225.

_____

{¶ 1} Around 11:00 p.m., on August 22, 1988, appellant Randy Nakoff, then age twenty-six, lost control of his motorcycle and landed in a sewage ditch. An ambulance transported him to nearby Fairview General Hospital.

{¶ 2} At the time of his admission, Nakoff was diagnosed with a comminuted fracture of his right tibia and fibula with a ten-centimeter laceration.[1] When the emergency room doctor assessed the circulation to Nakoff's right lower leg and foot, he found an intermittent, weak pulse, detectable with a Doppler instrument. Because of this assessment, at 12:14 a.m., the doctor telephoned appellee, Dr. George W. Essig, the orthopedic surgeon on call that night. Dr. Essig immediately ordered that antibiotics be administered to Nakoff.

{¶ 3} Upon his arrival at the hospital shortly thereafter, Dr. Essig noted that Nakoff's foot was cool. Although he could feel no pulse by touch, he was able to

---

1. Nakoff also separated his right shoulder, fractured his left ankle and sustained other soft tissue injuries.

detect a pulse using a Doppler instrument after repositioning the foot. Dr. Essig recognized that there was a potential vascular problem and alerted Dr. Constantine Papas, a vascular surgeon, appellee, that his services might be later needed.

{¶ 4} At 3:15 a.m., Dr. Essig took Nakoff to surgery. Initially, Dr. Essig debrided and irrigated the wound. Then he applied a Hoffman external fixator to realign the bones. When he tightened the fixator, he lost the pulse in Nakoff's foot and the foot became cold. At that point, around 7:00 a.m., Dr. Essig called in Dr. Papas.

{¶ 5} When Dr. Papas arrived in surgery, around 7:30 a.m., he was unable to detect pulses either by touch or Doppler. Dr. Papas performed an arteriogram, which failed to show that blood was flowing below the fracture site and showed an acute kink in the posterior tibial artery. Dr. Essig loosened the fixator and returned Nakoff's foot to the valgus position (not properly aligned, but rotated out). Nakoff's pulse returned and his foot regained color and warmth. An arteriogram after the valgus position was restored showed the kink no longer acute and blood flowing through the posterior tibial artery past the fracture. Dr. Papas concluded that Nakoff had adequate circulation.

{¶ 6} On August 25, 1988, Nakoff's foot once again became cool, and no pulses were detected. Dr. Papas was called in, and he took Nakoff back to surgery. Dr. Papas performed another arteriogram, and another doctor made some adjustment in the fixator. Nakoff's blood flow returned.

{¶ 7} Nakoff remained at Fairview General Hospital until August 29, 1988, at which time Dr. Essig, without consultation with Dr. Papas, transferred Nakoff to Cleveland Metropolitan General Hospital (now known as MetroHealth).

{¶ 8} The admission records at MetroHealth noted that Nakoff's foot was warm with a strong Dopplerable pulse. Two days after his admission, Dr. Mary Matejczyk, an orthopedic surgeon, took Nakoff to surgery to realign his bones. When she tried to do this, the blood flow to the foot stopped. Dr. Matejczyk called

2

in Dr. Jeffrey Alexander, a vascular surgeon, for consultation. Dr. Alexander performed a bypass graft of the posterior tibial artery. That graft later developed a clot, so on September 3, 1988, Dr. Alexander performed an anterior tibial bypass. However, Nakoff developed severe ischemia (loss of blood flow), and an amputation became necessary. One week later, Nakoff's right leg was amputated below the knee.

{¶ 9} On August 24, 1989, Nakoff[2] filed a malpractice action against Drs. Essig and Papas.[3] Nakoff contended that their negligence proximately caused the amputation of his right foot and leg below the knee. At trial, Nakoff maintained that Drs. Essig and Papas had been negligent in failing to appreciate the seriousness of the inadequate blood supply to his foot and in failing to revascularize it in a timely manner.

{¶ 10} The jury returned a $2,500,000 verdict in favor of Nakoff and against Drs. Essig and Papas. In a split decision, the court of appeals reversed the judgment based on the verdict and remanded the case for a new trial. The appellate court found that the trial court had improperly excluded the testimony of Dr. Matejczyk as a treating physician, erroneously refused to allow appellees to cross-examine Nakoff's expert with medical literature, improperly refused to submit to the jury an interrogatory on proximate causation, and improperly permitted the testimony of Nakoff's prosthetist.

{¶ 11} The cause is now before the court upon the allowance of a discretionary appeal.

_____

*Don C. Iler Co., L.P.A., Don C. Iler* and *Nancy C. Iler,* for appellant.

---

2. Nakoff's wife had a claim for loss of consortium. However, this claim was dropped during trial.

3. Nakoff's suit also named Fairview General, MetroHealth Medical Center, Dr. Matejczyk, Dr. Alexander, and others. These parties were dismissed from the lawsuit.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A.,* and *Janis L. Small,* for appellees George W. Essig and George W. Essig, M.D., Inc.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., John A Simon* and *John S. Polito*, for appellees Constantine A. Papas and C.A. Papas, M.D., Inc.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 12} In this case, we are asked to review several determinations made by the trial court which were reversed by the court of appeals. In passing upon the assigned errors, however, we could not help but notice that this case presents a glaring example of the lack of professionalism increasingly exhibited by some lawyers. We, therefore, take this opportunity to warn the practicing bar that we will not tolerate such behavior. While both plaintiff and defense counsel have an ethical obligation to zealously represent their clients, they must do so within the bounds of the law. Appellees' law firm failed to do this. The discovery rules adopted by this court were cavalierly ignored. Appellees' complaints about lack of a fair trial fall on deaf ears. If they were denied a fair trial, it was because of their own attorneys' actions. They must now live with the consequences.

{¶ 13} The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these rulings for an abuse of discretion. "'The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313, quoting *Spalding v. Spalding* (1959), 355 Mich. 382, 384-385, 94 N.W.2d 810, 811-812. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Id.* Applying this stringent review, we can discern no abuse of

discretion here. With this decision in mind, we now separately address each proposition of law raised by appellant Nakoff.

I. EXCLUSION OF DR. MATEJCZYK'S DEPOSITION TESTIMONY

{¶ 14} Dr. Matejczyk was originally named as a party defendant. In this role, Nakoff took her deposition on November 7, 1990. In May 1991, Dr. Matejczyk was dismissed from the lawsuit. In August 1991, appellee Dr. Essig sent a letter to Nakoff listing Dr. Matejczyk as a potential expert witness.

{¶ 15} In response to this letter, Nakoff asked several times for a new deposition date to depose Dr. Matejczyk to determine her opinions as an expert. His requests went unanswered. Additionally, in violation of Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division, an expert report from Dr. Matejczyk was not turned over to Nakoff.

{¶ 16} On December 18, 1991, Nakoff moved to compel appellees to provide deposition dates for Dr. Matejczyk or to bar her from being called as an expert witness. On January 7, 1992, Nakoff filed a motion to exclude the trial testimony of Dr. Matejczyk because of the defense's failure to comply with Loc.R. 21.1. This motion was granted by Judge Carl Character.

{¶ 17} Just prior to trial, the case was transferred from Judge Character to a visiting retired judge, Judge George McMonagle. Also, prior to trial, the parties agreed that Dr. Matejczyk could testify as a treating physician only. Despite this agreement, appellee Dr. Essig asked the court to reconsider Judge Character's earlier ruling excluding Dr. Matejczyk's trial testimony. The court stood by the original ruling and did not allow any of the doctor's deposition to be read. Dr. Essig then proffered Exhibit F, selected portions of Dr. Matejczyk's November 7, 1990 deposition that contained both fact testimony and opinion testimony.

{¶ 18} The court of appeals held that the exclusion of Dr. Matejczyk's deposition testimony was reversible error under Civ.R. 32(A)(3)(e). The court

further reasoned that her testimony was crucial as to the condition of Nakoff's foot at the time of his transfer to MetroHealth and should not have been excluded.

{¶ 19} As found by the court of appeals, Civ.R. 32(A)(3)(e) permits the use at trial of the deposition of an attending physician. However, the use of such a deposition at trial presumes that no discovery abuses have occurred -- which was not the case here.

{¶ 20} Prior to trial, Dr. Essig[4] identified Dr. Matejczyk as a possible expert witness. Civ.R. 26(B)(4)(b) provides that any party may discover from an opposing party or his expert the relevant facts known or opinions held by the expert that are relevant to the issue. Loc.R. 21.1 says that an expert report must be given to the opposing side. Dr. Essig ignored both discovery rules. In light of these discovery abuses, Nakoff asked the court to impose a sanction, *i.e.*, the exclusion of Dr. Matejczyk's trial testimony. Pursuant to Loc.R.21.1, the trial court was within its discretion in imposing the sanction. See *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 15 OBR 142, 472 N.E.2d 704.

{¶ 21} Dr. Essig argues that the court abused its discretion because Dr. Matejczyk was an important fact witness with crucial testimony and it was not necessary to produce an expert report of a treating physician when that physician does not present expert testimony. *Long v. Isakov* (1989), 58 Ohio App.3d 46, 50, 568 N.E.2d 707, 711-712. However, the proffered Exhibit F contained mixed fact testimony and opinion testimony. Dr. Essig did not delete the opinion testimony from the exhibit. Nor was it the court's responsibility to do so. Thus, Dr. Essig was attempting to do indirectly what the court order prohibited him from doing.

{¶ 22} We find that the trial court imposed its sanction because of Dr. Essig's persistent failure to present the doctor for expert deposition as allowed by

---

4. Dr. Papas did not identify Dr. Matejczyk as one of his witnesses, nor did he join in the proffer at trial.

Civ.R. 26(B)(4)(b) and for his violation of Loc.R. 21.1 in failing to provide an expert report outlining the expert opinions in support of Dr. Essig. This sanction was properly imposed and we find no abuse of discretion.

## II. EXCLUDING USE OF MEDICAL LITERATURE FOR IMPEACHMENT PURPOSES

{¶ 23} In Ohio, medical literature may be used for impeachment purposes if the expert witness to be impeached relied upon the literature. *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532. In conformance with this rule, appellees sought to impeach Nakoff's expert witness but were precluded from doing so by the trial court. This action occurred because of yet another discovery abuse committed by appellees.

{¶ 24} Six days before trial, Nakoff filed a motion *in limine* to exclude defendants' use of any medical literature at trial. The motion came about after appellees failed to supplement their answers to interrogatories regarding authoritative texts and failed to cause their experts to bring those texts to their depositions, although requested, and after Dr. Essig failed to produce the texts despite Nakoff's repeated requests. Indeed, as late as January 10, 1992, Dr. Essig's counsel had reassured Nakoff that he was in the process of receiving the materials and would forward them when he received them. This reassurance probably accounts for the late filing of the motion.

{¶ 25} At trial, the trial court disallowed appellees' impeachment of Nakoff's expert with authoritative texts. The court of appeals held that this sanction was inappropriate because the trial court had never issued a discovery order prior to imposing the sanction. We disagree. Again, our job is merely to determine if the trial court abused its discretion in imposing the sanction. We find no abuse of discretion.

{¶ 26} Appellees repeatedly dodged their obligations to comply with discovery requests and just before trial one of them reassured Nakoff's counsel that

he would receive the requested material. Under these circumstances, we fail to see how appellees can now complain.

### III.  JURY INTERROGATORIES

**{¶ 27}** Both Dr. Essig and Dr. Papas submitted four jury interrogatories. These interrogatories were identical. The court refused to give Interrogatory No. 4, finding that it was duplicative of No. 2. The court of appeals found this ruling to be reversible error.

**{¶ 28}** For each defendant the interrogatories read as follows:

"1.  Has the plaintiff proven by a preponderance of the evidence that [defendant] failed to comply with acceptable standards of medical practice with respect to his care and treatment of Randy Nakoff?"

"2.  If your answer to No. 1 is 'yes,' then state in what respects you find [defendant] failed to comply with acceptable standard[s] of medical practice with respect to his care and treatment of Randy Nakoff."

"3.  If your answer to No. 2 is 'yes,' then answer the following:  Has the Plaintiff proven by a preponderance of the evidence that [defendant's] departure from acceptable medical standards proximately caused Randy Nakoff's injury?"

"4.  If your answer to Interrogatory No. 3 is 'yes,' then state the facts upon which you find, by a preponderance of the evidence, that [defendant] proximately caused Randy Nakoff's injury."

**{¶ 29}** Appellees contend, and the court of appeals found, that the trial court was required pursuant to Civ.R. 49(B) to submit Interrogatory No. 4 to the jury. Although Civ.R. 49(B) mandates the submission of requested interrogatories, the court still has the discretion to reject interrogatories that are ambiguous, confusing, redundant, or otherwise legally objectionable. *Ramage v. Cent. Ohio Emergency Serv.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828.

**{¶ 30}** The trial court properly determined that the first three interrogatories went to all elements of negligence, including proximate causation, and that

Interrogatory No. 4 was redundant. Indeed, the jury was instructed that the appellees' negligence or their failure to comply with accepted standards of medical practice must be the proximate cause of Nakoff's injury in order to warrant a verdict for Nakoff. The particulars of the appellees' failure to comply with accepted standards of care were listed by the jury in response to Interrogatory No. 2. Further, in Interrogatory No. 3, the jury stated affirmatively that appellees' departure from acceptable medical standards proximately caused Nakoff's injury. The trial court did not abuse its discretion in rejecting proposed Interrogatory No. 4.

IV. UNTIMELINESS OF REPORT CONCERNING COSTS OF PROSTHETIC EQUIPMENT AND SERVICES

{¶ 31} Finally, the court of appeals reversed on the ground that the trial court permitted the testimony of Manuel Garcia, Nakoff's prosthetist, who testified concerning the costs of prosthetic devices and services, even though appellees did not receive his expert report until one week prior to trial. The appellate court found that the trial court committed an abuse of discretion in its inconsistent application of discovery sanctions.

{¶ 32} We find no abuse of discretion. While late, Nakoff did turn over an expert report. In addition, Garcia was identified as early as March 1990, and appellees made no attempt to depose him. Further, Garcia's records and bills were supplied to appellees at around the same time, and additional records were supplied to appellees on January 15 and 17, 1992.

{¶ 33} We will not second-guess the trial court's discovery rulings. It acted well within its discretion and we find no error.

## V.  CONCLUSION

**{¶ 34}** In conclusion, we hold that a trial court has broad discretion when imposing discovery sanctions.  A reviewing court shall review these rulings only for an abuse of discretion.  We fail to find the trial court abused its discretion in its rulings.

*Judgment reversed.*

RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., concur separately.

PFEIFER, J., concurs separately.

WRIGHT, J., dissents.

DOUGLAS, J., not participating.

_____

**PFEIFER, J., concurring.**

**{¶ 35}** I concur in the syllabus and judgment and in the lead opinion's strong words regarding abuse of the discovery process.  This case is representative of a growing problem in the legal profession: a flouting of the rules of discovery, and broader notions of fair play, in the name of zealous representation of a client.

**{¶ 36}** I also agree with Justice Wright's characterization of the exclusion of Dr. Matejcyzk's fact testimony as error.  However, I find the error to be harmless.  Appellees argue that Dr. Matejczyk's deposition testimony, in which she stated that Nakoff had adequate circulation upon arrival at MetroHealth, was essential to disprove Nakoff's expert's testimony that there was a lack of circulation and that immediate bypass surgery was needed.  However, other evidence supported appellees' position that there was adequate circulation.  This evidence was presented in Fairview Hospital discharge notes, MetroHealth admission notes, progress notes and operation reports, the testimony of Dr. Alexander, the vascular surgeon at MetroHealth who performed the bypass, and the testimony of defense expert witnesses Dr. Kellum and Dr. King.

{¶ 37} Dr. Matejczyk's proffered deposition reveals that her observations were not crucial to the defense, but were instead duplicative of the other evidence presented. While Justice Wright points out the judge's error, he does not demonstrate how the defendants were prejudiced by it. That's because they weren't.

{¶ 38} The more troublesome problem in this case is the size of the jury verdict. Appellees included a request for a remittitur in their appeal to the appellate court, but that issue was mooted when the appellate court ordered a new trial. I have tried unsuccessfully to persuade at least three of my colleagues that the verdict in this case was too large -- especially considering that Nakoff made no claim for lost wages and that his wife's claim for loss of consortium was dropped. Nakoff's recovery has been superb -- he returned to work after the accident and his skills as a carpenter have been relatively undiminished. Also, his leg was so badly injured from the accident that even without amputation he faced potential mobility problems.

{¶ 39} However, after reading much of the trial transcript and all of the closing arguments in the case, appellees' counsel's failure to spend any meaningful time or offer one word in closing argument with regard to mitigation leaves me no ammunition with which to be persuasive. Appellees' failure to offer the jury their own theory of damages destroyed any effective argument for remittitur. While an all or nothing approach to damages is a viable strategy in some cases, it was obviously not a good one here. It undermined any potential inclination of this court to order a remittitur.

———————————

**COOK, J., concurring.**

{¶ 40} I concur in the syllabus and the judgment of the majority. I also concur with the principle that the litigation arena of the legal system suffers when so-called hardball tactics are employed by lawyers. The problems brought to lawyers by their clients are difficult enough to resolve in a professional manner without adding the expense and waste of time necessitated by gamesmanship during discovery. I agree with Justice Sweeney that such conduct should never be condoned and that courts should be empowered to exercise sound discretion in curbing it through imposition of sanctions. Strict compliance with local court rules and the Ohio rules of procedure should be insisted upon by our judges; the system is intended to function best with uniform rule compliance.

{¶ 41} In this case, compliance with the rules could have obviated the situation now labeled an injustice. Defense counsel would have been under no obligation to produce an expert's report from this treating physician if the witness had not been identified to the plaintiff as an expert. That choice triggered an obligation to produce an expert's report. I do not concur with the distinction Justice Wright draws between the expert testimony and nonexpert testimony of a witness identified as an expert because Loc.R. 21.1(B) says that "[a] party may not call an expert *witness* to testify unless ***." (Emphasis added.) The rule goes on to limit *testimony* in those cases where a report has been produced to those issues contained in the report. Thus, the rule plainly allows the court to exclude the witness where no report is provided to opposing counsel.

{¶ 42} Faced with the appropriate response of the trial court to this rule violation, that is, excluding trial testimony by *the witness* from whom no report has been procured, counsel secured an agreement with plaintiff's counsel that the doctor could testify but could not opine on the standard of care. Then at trial defense counsel tried to read the doctor's discovery deposition. Counsel for Nakoff did not agree to reading the discovery deposition even with redactions. Prior to any

such agreement, counsel for Nakoff no doubt would have asked to have the proposed excerpts in advance of trial to determine whether any opinion testimony was sought to be introduced. When defense counsel went beyond the precise agreement, he was relegated to the order of Judge Character, excluding the witness. Moreover, the proffered deposition included unredacted answers to opinion-type questions.

{¶ 43} The whole series of events that resulted in the exclusion of the deposition testimony could easily have been avoided. I find no abuse of discretion.

{¶ 44} Even if evidence has been erroneously excluded, such exclusion must be shown to be prejudicial. I would not find the exclusion of evidence to be prejudicial because, as pointed out by Justice Sweeney in the lead opinion, the trial court did admit other evidence of the condition of Nakoff's foot upon admission to Metro General.

MOYER, C.J., concurs in the foregoing concurring opinion.

_____

**WRIGHT, J. dissenting.**

{¶ 45} The majority is correct when it notes that the exclusion of expert testimony under Loc.R. 21.1(B) is an appropriate sanction for discovery abuses. However, the majority uses this unassailable proposition to bolster Judge McMonagle's exclusion of Dr. Matejczyk's deposition testimony on *questions of fact*. In reaching this result, the majority refuses to acknowledge that Judge Character's pretrial order, as it relates to Dr. Matejczyk, addressed only her testimony as an expert.[5] In addition, the majority fails to recognize that Loc.R. 21.1(B) provides for the exclusion of *expert* testimony *only*.

---

5. Although Evid.R. 702 does not state it explicitly, it is commonly understood that an "expert witness" is not simply one who testifies on "matters beyond the knowledge or experience possessed by lay persons." Rather, to be properly characterized as "expert" the witness's testimony must go beyond merely factual testimony and offer opinions or draw inferences from observation and expertise.

**{¶ 46}** The relevant portion of Loc.R. 21.1 states that "[a] party may not call an *expert* witness to testify unless a written report has been procured from the witness and provided to opposing counsel." (Emphasis added.) A plain reading of this rule, a reading scrupulously avoided in the majority opinion, forces the conclusion that this rule is exclusively concerned with expert testimony. Indeed, that is precisely the type of testimony Nakoff sought to exclude when he filed the pretrial motion and supporting memorandum based on Loc.R. 21.1, and that is the only sort of testimony targeted by Judge Character's resulting order. Consequently, Judge McMonagle's use of the pretrial order as support for his decision to exclude *all* testimony by Dr. Matejczyk was a grossly erroneous characterization of the original trial judge's decision.

**{¶ 47}** What I find most troubling about the majority opinion, aside from its apparent failure to read the rule it seeks to apply, is the spin it puts on the circumstances surrounding this matter. As the majority acknowledges, all of the involved parties agreed at a meeting held directly before the start of trial, a meeting attended by Judge McMonagle, that Dr. Matejczyk could testify as a treating physician - a "fact" witness, if you will. Accordingly, Dr. Matejczyk's deposition testimony would not have fallen within the scope of Judge Character's pretrial order, which was strictly concerned with expert testimony. However, the majority claims that "*[d]espite* this agreement, appellee Dr. Essig asked the court to reconsider Judge Character's earlier ruling excluding Dr. Matejczyk's trial testimony."

**{¶ 48}** I am at a loss to explain this interpretation of events at trial. The record reflects that Dr. Essig's counsel simply asked to read Dr. Matejczyk's deposition transcript to the jury, in place of Dr. Matejczyk's live testimony as a treating physician. This transcript, with one arguable exception, was redacted to eliminate clear-cut opinion testimony, and only addressed Dr. Matejczyk's role as a treating physician.

**{¶ 49}** Indeed, had Judge McMonagle carefully considered this matter and conferred with counsel about objections to the substance of the transcript, *all* opinion testimony would have been excised. Regrettably, it is apparent that, for whatever reason, Judge McMonagle misunderstood Judge Character's pretrial order, and issued a ruling that exceeded the scope of Judge Character's order.

**{¶ 50}** I must point out that Nakoff would not have been unfairly surprised by Dr. Matejczyk's deposition testimony. As the court of appeals stated, Nakoff had "requested, conducted and filed Matejczyk's deposition ***, and, therefore, [Nakoff] was clearly aware of [Matejczyk's] testimony." Consequently, Judge McMonagle's ruling on this issue was reversible error. Accordingly, the court of appeals could have reversed the trial judge without finding an abuse of discretion, which, admittedly, was not present in this instance.

**{¶ 51}** The court of appeals also appropriately ruled that prejudicial error was present with respect to three other issues determined by Judge McMonagle. First, Judge McMonagle erred by preventing appellees' from using medical literature in their cross-examination of Nakoff's expert, Dr. Mundinger. Second, Judge McMonagle should have held Nakoff to the same standard applied to the appellees and excluded the expert testimony of Dr. Garcia as a sanction for discovery abuses. Finally, Judge McMonagle should have submitted the appellees' narrative interrogatory on proximate cause to the jury. Thus, although I agree with the substance of Judge Pfeifer's concurring opinion, I feel there was reversible error, and respectfully dissent.

_____