**HOLDER, Appellant,**

v.

**HOLDER, Appellee.**

[Cite as *Holder v. Holder,* 171 Ohio App.3d 728, 2007-Ohio-2354.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21925.

Decided May 11, 2007.

James R. Kirkland, for appellant.

Marc Greenberg, for appellee.

DONOVAN, Judge.

{¶ 1} This matter is before the court on the notice of appeal of Steve Holder, filed November 30, 2006. Steve and Celeste Holder were married on July 25, 1997, and they were divorced on January 21, 2003. The parties have one daughter, Michelle, born April 6, 1998, and they entered into a shared-parenting plan upon their divorce. Conflict soon arose between the parties due to their different religions. Celeste joined the United Pentecostal Church in 2000, and Steve is Roman Catholic. Michelle was baptized in the Catholic Church while her parents were still married. Celeste's church has several lifestyle restrictions that affect Michelle. On September 3, 2004, Steve filed a motion for sole custody. On September 22, 2004, Celeste filed a motion for sole custody, and, in the alternative, asked that the court award shared parenting to the parties pursuant to her newly proposed shared-parenting plan. On October 15, 2004, Steve filed a reply to Celeste's proposed shared-parenting plan, arguing against its adoption. A hearing was held on the matter on August 23 and 30, 2005. On May 23, 2006, the magistrate issued a decision and permanent order, granting sole custody to Steve, overruling Celeste's motion for sole custody, and also overruling her motion to modify the shared-parenting plan.

{¶ 2} The magistrate noted that the parties' "conflict stemming from their differing beliefs and values is having a very negative [e]ffect on Michelle. * * * Some examples of defendant's religious practices which have a direct effect on Michelle include: defendant's insistence that Michelle can only swim if she wears a dress and there are no boys in the water. Michelle cannot wear pants or shorts. Michelle can only wear dresses that are below the knees and cover three-quarters of her arms. The defendant does not believe females should cut their hair, wear make-up, jewelry or nail polish. The defendant will not allow Michelle to watch television. Defendant does not support or approve of Michelle participating in sports or dance. Michelle attends St. Charles Catholic School where she wears a uniform. According to the defendant, this uniform does not conform to her religion's requirements.

{¶ 3} "The defendant is rigid and uncompromising in her religious beliefs. She wants Michelle to adhere only to the defendant's religious doctrine. Defendant also stated that she will not sacrifice her religious convictions to appease the court or the plaintiff.

{¶ 4} " * * *

{¶ 5} "The plaintiff believes that the defendant loves Michelle and that defendant and Michelle are bonded. Plaintiff does not believe, however, that the defendant is a good mother to Michelle, because defendant puts her religious needs ahead of the child's needs. * * * According to the plaintiff, Michelle is well adjusted for the most part and is doing well in school where she is socially accepted.

{¶ 6} " * * *

{¶ 7} "Plaintiff has taken Michelle to Dr. Tyrone Payne for counseling to assist Michelle in adjusting to the differences in her parents' households. Dr. Payne described Michelle as having a pretty good self-concept, but Michelle has expressed guilt and anxiety as well as fear. * * * It is Dr. Payne's belief that the cause of Michelle's anxiety and conflict is the child's knowledge of the differences in her parents' homes. Michelle is especially aware of what she cannot do in the defendant's home. Because of the conflict between the homes, Michelle sometimes feels she cannot tell the truth or she will lie by omission. Dr. Payne expressed concern over the fact that Michelle feels a lot of guilt and anxiety. He stated that it is especially bad for a child to feel such guilt and anxiety. When a child is older that child may become rebellious and angry. The anger will be focused on the parent she perceives as trying to stop her activities but will also spill over on the other parent. Michelle's anxiety has not eased since Dr. Payne first saw her in 2004.

{¶ 8} "If the conflict continues, Dr. Payne recommends that Michelle adopt only one religion and attend only similar churches. It is his belief that one parent needs to be quiet about their religion and let the child practice just the one religious choice.

{¶ 9} "Dr. Phyllis Kuehnl–Walters was appointed by this court to conduct a psychological evaluation for purposes of making recommendations as to custody in this matter. Dr. Kuehnl–Walters recommended that the plaintiff-father be designated the sole custodian of Michelle with the defendant-mother being granted liberal parenting time. * * * According to the psychologist, in her professional opinion, the two conflicting faiths have fostered fear, deceitfulness, guilt and confusion for Michelle. She, therefore, recommended that Michelle not attend religious services with the defendant.

{¶ 10} " * * *

{¶ 11} "Dr. Kuehnl–Walters was concerned that although Michelle is bonded to both parents, she is 'tormented' by keeping secrets on both sides. According to the psychologist, the child is too young to deal with this form of conflict. Michelle told Dr. Kuehnl–Walters that she fears that if she does the things permitted by the plaintiff-father, such as wearing jeans or playing sports, then she is going to go to Hell according to the defendant-mother's standards. In her deposition, Dr. Kuehnl–Walters stated that in 30 years she had never experienced a parent who was so rigidly willing to adhere to her church's principles, that she would be willing to sacrifice her own child."

{¶ 12} The magistrate determined that "the only practical way to reduce the conflict in this case is to choose a sole custodian for Michelle. In choosing a sole custodian, this magistrate must choose the parent who will provide for Michelle's best interests and has the ability to separate the child's needs from their own. The evidence presented, including Dr. Kuehnl–Walter's evaluation, shows that the defendant is unable to separate her own needs from those of Michelle's. Therefore, based on the evidence presented, including the psychological evaluation, the witnesses' demeanors and credibility, as well as the statutory and case law," the magistrate determined that Steve should have sole custody of Michelle. The trial court granted Celeste the court's standard order of parenting time, changing her midweek visitation from Wednesday to Tuesday and scheduling her alternating weekend time from noon on Saturday until 7:00 p.m. on Sunday. The magistrate ordered Celeste to "provide for transportation to take Michelle to any activities which occur during her parenting time unless she has made arrangements with the plaintiff otherwise."

{¶ 13} On June 6, 2006, Steve filed objections to the magistrate's decision. Steve argued that the trial court should "adopt the Plaintiff's standard of living for the child as to eliminate the double standard of living she is currently dealing

with as to cause no further anxiety or confusion." Steve also argued that "the court should rule that the child is not permitted to attend any church services or activities with Defendant." Finally, Steve argued that "the court should rule that Defendant must allow and provide transportation for the child to her school and extracurricular activities. If Defendant is unable or unwilling to provide such transportation then parenting time should be modified as to allow the child to participate in her activities."

{¶ 14} On October 5, 2006, Steve filed supplemental objections, again asking the court to order "1) that the minor child continues following the standard of living and religion of Plaintiff, who is her residential parent, 2) that Defendant be prohibited from taking the minor child to any church related or religious activities, and 3) the Defendant be ordered to take the minor child to all of her activities or make arrangements for her attend these activities or forfeit those time with the minor child."

{¶ 15} On November 3, 2006, the trial court issued a decision and judgment, finding that Steve's objections were not well taken. The trial court determined that the magistrate "specifically addressed the issue of defendant arranging transportation of Michelle to her activities." The court also determined that it "will not prohibit either party from having their child accompany them to religious services."

{¶ 16} Steve asserts two assignments of error. His first assignment of error is as follows:

{¶ 17} "The court erred in not ordering appellee to refrain from taking the daughter to religious activities."

{¶ 18} While this appeal involves Celeste's visitation rights and not custody, our analysis begins with the child-custody statute, R.C. 3109.04(F), which provides that the best interests of the child must be determined after a consideration of all relevant factors, including "(c) [t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) [t]he child's adjustment to the child's home, school, and community; [and] (e) [t]he mental and physical health of all persons involved in the situation." Clearly, identical logic applies to any allocation of parental rights and responsibilities in terms of visitation.

{¶ 19} " 'The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' A reviewing court will not overturn a custody determina-

tion unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." *Haynes v. Haynes* (Nov. 13, 1998), Montgomery App. No. 16992, 1998 WL 865040, *2, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846.

{¶ 20} Steve relies on *Pater v. Pater*, 63 Ohio St.3d 393, 395, 588 N.E.2d 794, which held that "a domestic relations court may consider the religious practices of the parents in order to protect the best interests of a child" (citing *Birch v. Birch* (1984), 11 Ohio St.3d 85, 11 OBR 327, 463 N.E.2d 1254). "[A] parent's actions are not insulated from the domestic relations court's inquiry just because they are based on religious beliefs, especially actions that will harm the child's mental or physical health." Id. at 399, 588 N.E.2d 794. In *Pater*, at issue was the effect that the religious practices of the mother, a Jehovah's Witness, would have on the child if the court granted custody to the mother instead of the father, a Roman Catholic. In reversing the award of custody to the father, the court determined that "custody may not be denied to a parent solely because she will not encourage her child to salute the flag, celebrate holidays, or participate in extracurricular activities," and the court also determined that the trial court's orders were improperly based on the mother's religious beliefs. Id. at 395–396, 588 N.E.2d 794. The court noted that "parents have a fundamental right to educate their children, including the right to communicate their moral and religious values." Id.

{¶ 21} Celeste relies on *Davidovics v. Shore* (1999), 135 Ohio App.3d 374, 734 N.E.2d 395, which held that a modification to the parties' shared-parenting plan allowing the mother to choose a religious school outside the father's religious tradition was not an abuse of discretion. There was nothing in the record to indicate that the child's "attending an Orthodox or conservative Jewish school would be against [the child's] best interests." It was significant to the court that since the child resided with his father, his attendance at the religious school ensured the child's exposure to *both* of his parents' religious practices on a daily basis.

{¶ 22} Our review of the matter herein makes clear that the trial court correctly refused to prohibit Celeste from taking Michelle to her church's religious activities. Steve testified that Celeste and Michelle are bonded and that Michelle is well adjusted for the most part and doing well in school. Further, the magistrate determined, after an in camera interview with Michelle, that she "is a charming intelligent, outgoing little girl who expressed love for both of her parents." That Michelle experiences ongoing conflict between the two households does not affect Michelle's general welfare to the extent that Celeste's fundamental right to communicate her religious convictions to Michelle should be

curtailed. *Pater*, 63 Ohio St.3d 393, 588 N.E.2d 794. There being no abuse of discretion, Steve's first assignment of error is overruled.

{¶ 23} As mentioned above, custody is not the issue in this appeal, but we note that Celeste's unrelenting refusal to place Michelle's needs above her own religious convictions clearly justified the trial court's grant of sole custody of Michelle to Steve. See, e.g., *Birch*, 11 Ohio St.3d 85, 11 OBR 327, 463 N.E.2d 1254 (in denying mother custody of her children, consideration of her religious practices, which included requiring her children to dress so that little of their bodies showed, even in the hottest days of summer and also required suffering and constant prayer to the Virgin Mary in order to be saved, did not violate mother's right to the free exercise of religion, because, "[i]n recognition of society's legitimate interest in the welfare of its minor children, the law does not require that a child be actually harmed or that a parent's unsuitability to have custody of her children be disregarded because the parent claims that the bases of her unsuitability are religious practices"). Id. at 87, 11 OBR 327, 463 N.E.2d 1254.

{¶ 24} While Celeste has the right to have Michelle participate in any religious experience she finds appropriate, it is our expectation that she will not continue to foster conflict and to attack Steve's religious orientation by means of Michelle. Celeste's intolerance is "a classic example of [a parent] using religion in all the wrong ways with [her child]." *Reier v. Reier* (June 21, 1996), Darke App. No. 1372, 1996 WL 339943, *2.

{¶ 25} Celeste's proposed shared-parenting plan contained the following language: "Neither of the parents shall put any obstacle in the way of the maintenance of love and affection between the child and the other parent, nor shall either parent do anything to estrange the child from the other parent." It is our expectation that Celeste will accept that it is in Michelle's best interest that the religious values of both her parents be supported in a reciprocal atmosphere of respect. *Davidovics*, 135 Ohio App.3d 374, 734 N.E.2d 395.

{¶ 26} Steve's second assignment of error is as follows:

{¶ 27} "The trial court erred in awarding visitation to the appellee during times in which she may take the child to religious activities."

{¶ 28} According to Steve, "In the totality of the circumstances, the court was unreasonable to assume that the mother would refrain from taking the child to religious activities if the child was in her custody on days that the mother herself would normally take part in religious activities." As indicated above, Celeste has a fundamental right to share her religion with Michelle, and the trial court did

not abuse its discretion in its award of visitation to Celeste. Steve's second assignment of error is overruled.

Judgment affirmed.

FAIN, J., concurs.

WALTERS, J., concurs separately.

WALTERS, Judge, concurring separately.

{¶ 29} Based upon the record before us, I cannot conclude, as did the majority, that the trial court correctly refused to prohibit Celeste from taking Michelle to her church's religious activities.

{¶ 30} I believe that the evidence is replete with uncontroverted indications that Celeste is unreasonably rigid and uncompromising in her religious beliefs, that she consistently places what she determines her religious obligations to be over the best interests of Michelle, that Michelle is "tormented" and suffers "guilt, anxiety and fear," and that Michelle may suffer from long-term problems. All of this is solely because of Celeste's actions.

{¶ 31} Likewise, based upon the evidence before us that Celeste regards her religious experiences to be more important than her daughter's well-being and because she has expressed to the court that she will not modify them for the benefit of the child or to appease the court, I am not as convinced as the majority seems to be that Celeste will modify her behavior in order to reduce the conflict for Michelle. And, I would suggest that if she does not, then it might constitute an abuse of discretion for the trial court to refuse to limit Michelle's participation in Celeste's religion.

{¶ 32} While every parent has a fundamental right to share his or her religion with a minor child, that right cannot transcend the fundamental obligation that a parent has to not cause harm to the child. And, when the "sharing" of a religion presently causes harm to the child, as both psychologists testified, then the court has the obligation to step in on the child's behalf and impose restrictions upon an offending parent. The trial court took a big step in that direction herein by awarding sole custody to Steve. If there is a next time, more drastic action may need to be taken.

{¶ 33} However, an "abuse of discretion" requires us to find that the trial court's result is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256–257, 662 N.E.2d 1.

For that reason, I am required to concur with the majority that the trial court's decision does not constitute an abuse of discretion.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.