[Cite as *Altercare, Inc. v. Clark*, 2013-Ohio-2785.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

ALTERCARE, INC.

      Appellant/Cross-Appellee

      v.

LISA MARIE CLARK

      Appellee/Cross-Appellant

C.A. No.     12CA010211

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    08CV159219

DECISION AND JOURNAL ENTRY

Dated: June 28, 2013

---

WHITMORE, Judge.

{¶1} Appellant/Cross-Appellee, Altercare, Inc. ("Altercare"), appeals from the judgment of the Lorain County Court of Common Pleas. Additionally, Appellee/Cross-Appellant, Lisa Marie Clark, has filed a notice of cross-appeal from the court's judgment. This Court affirms.

I

{¶2} In July 2007, Altercare hired Clark as the CEO of its nursing home facility, Northridge Health Care Center ("Northridge"). Clark worked at Northridge until late March 2008, when she was told not to return to work. Believing that she had been terminated without proper written notice under her employment contract, Clark consulted with an attorney. On April 9, 2008, Clark's attorney sent a letter to Altercare. The letter set forth Clark's position that Altercare had breached her employment contract and requested that Altercare take a variety of remedial measures. The letter also specifically provided that:

> [i]n the meantime, Altercare * * * has a legal obligation to take all necessary steps to preserve potentially relevant evidence in this case, including evidence that is maintained electronically ("Electronically Stored Information" or "ESI"), digitally, and in document form.

The letter set forth a non-exhaustive list of the types of data covered by Altercare's obligation.

Additionally, it provided that:

> Altercare can most easily comply with its obligations by making a mirror-image bit stream back-up copy of computers and storage media (such as hard disk drive[s], floppy disks, CDs, DVDs, back-up tapes, or any other electronic data), which will inexpensively preserve relevant electronic and digital evidence on searchable CD-ROMs or DVD. This copy can then be searched later for potentially relevant evidence without imposing an undue burden on the day-to-day operations of the company.

During her time at Northridge, Clark had her own office and her own computer, which was designated as the CEO computer.

{¶3} Subsequently, Altercare brought suit against Clark for breach of contract, breach of fiduciary duty, fraudulent inducement, and conversion. The basic thrust of Altercare's suit was that Clark had misrepresented her qualifications and had damaged Northridge by grossly mismanaging it during her tenure. In response, Clark filed an answer as well as a counterclaim for breach of contract, retaliation, conversion, and defamation. On April 16, 2009, she served Altercare with her first set of discovery requests. One particular request was that Altercare produce "[a]ll of Altercare's notes, documents, records, reports, memoranda, and/or electronically stored information ('ESI') relating to Lisa Marie Clark and/or Lisa Marie Clark's employment from Altercare." From that point forward, the ESI in Altercare's possession became a matter of great contention.

{¶4} Throughout the discovery process, the trial court conducted numerous status hearings and motion hearings at which the parties discussed the ESI that Clark sought. In July 2009, the court ordered Altercare to provide Clark with the ESI she sought. Clark and an expert

she retained visited Northridge in September 2009 to copy the ESI from the computers at the facility. Upon their arrival, however, Clark was informed that the computer she had used during her employment "had crashed" a few weeks earlier and was not available. Altercare later agreed to review the contents of the computer to see if any information on it was recoverable. In November 2009, the court ordered Altercare to have its own expert review the crashed computer and to provide Clark with access to the hard drive once its review was complete. Altercare sent the hard drive to Clark the following month with a letter indicating that its expert had determined that "99% of the data on the hard drive [was] recoverable." Yet, Altercare did not review any of the particular data on the hard drive, and Clark was not able to retrieve any of the data she needed from the hard drive when she received it. In May 2010, the court held a status conference and noted in a journal entry that the parties were working with a third party "to determine [the] least expensive means to provide hard-drive retrieval of [Clark's] crashed computer."

{¶5} By August 2010, Clark still had not been able to retrieve any useful data from the crashed hard drive. The trial court held a hearing on August 16, 2010, to address the issue again. At the hearing, Altercare admitted that its own expert previously had provided it with the information he had been able to obtain from the crashed computer, but Altercare still had not reviewed the information. Altercare's expert participated at the hearing and explained the types of files that he had been able to recover and copy from the hard drive. Specifically, he had been able to copy (1) active files, which were easily viewable, and (2) deleted, slack, and unallocated files, which required forensic tools to view. Altercare agreed to give Clark a copy of the hard drive information provided to it by its expert. The court ordered Clark to review the information

from the active files and determine whether it would be necessary to have Altercare expend additional funds to have a forensic expert search the deleted, slack, and unallocated files.

{¶6} After spending a substantial amount of time reviewing the information from Altercare's expert, Clark determined that the computer hard drive Altercare had provided her was not, in fact, from her computer. On October 1, 2010, Clark filed a motion to compel as well as a request for sanctions, owing to the fact that Altercare still had not produced her CEO computer. A hearing before a magistrate occurred a few weeks later. At the hearing, Clark explained that she had extensively searched the copy of the hard drive Altercare provided and had determined that it belonged to one of Northridge's former administrators. After the hearing, the court ordered Altercare to verify whether the hard drive it had produced was Clark's by inspecting the serial number. The court further ordered Altercare, in the event the computer was not Clark's, to "provide information concerning the location of the correct hard drive * * * and produce it [or] if not available, explain why it is not."

{¶7} On November 12, 2010, Altercare filed a response to the court's order. Altercare notified the court that it had audited all twelve of the computers currently at its facility and had determined that only one contained a user profile for Clark and was registered in her name. Accordingly, Altercare had the computer's hard drive forensically imaged and forwarded a copy of it to Clark.

{¶8} On March 2, 2011, Clark filed another motion to compel as well as a request for sanctions because Altercare had failed once again to produce her hard drive. The court held a hearing on March 23, 2011, at which Clark explained that the second hard drive Altercare had produced did not contain any of the documents Clark knew she had created and stored on her CEO computer while employed at Northridge. Meanwhile, Altercare maintained that it had

provided Clark with the appropriate hard drive, as it was the only one at its facility that bore her user profile and was registered in her name. After extensive discussion, the court agreed to set another hearing for the purpose of determining whether Altercare had, in fact, produced Clark's computer. The hearing ultimately took place on August 23, 2011.

{¶9} Both parties presented expert testimony at the hearing with regard to the contents of the second computer hard drive that Altercare had produced. Only a minimal number of items related to Clark were found on the hard drive. Clark also testified and explained that the hard drive was from a computer that she had purchased, registered, and set up during her tenure at Northridge for the two nurses who were responsible for the billing system. Clark testified that Northridge had at least 14 computers onsite when she worked there, but that when she and her expert originally visited the facility in September 2009 only 12 computers were present. Clark confirmed that, of the two hard drives Altercare had produced to date, neither was from the computer that she had used during her employment.

{¶10} Following the hearing, Clark filed a motion for sanctions based on Altercare's spoliation of the evidence. On March 1, 2012, the trial court issued its ruling on Clark's motion for sanctions. The trial court found that:

> the hearing and prior discovery conferences demonstrate that for whatever reason, Altercare * * * ha[s] not preserved Lisa Clark's work computer even though it could have done so by pulling it out of service or making a copy or clone of its hard drive at the time Ms. Clark put [Altercare] on notice of the need to do so in April of 2009.

The court further found that, as the party responsible for preserving the computer and any ESI once litigation was contemplated, Altercare had done nothing to comply with its obligation. While the court noted that it did not have sufficient evidence of intentional misconduct on Altercare's part, it determined that Altercare's conduct showed "such extreme carelessness and

indifference" that Altercare had to "bear[] the responsibility for the spoliation of the evidence." Consequently, the court dismissed Altercare's complaint against Clark as a sanction for spoliation. The court also held that Clark would be entitled to a jury instruction regarding Altercare's spoliation in litigating her counterclaims against Altercare. Nevertheless, the court refused to grant Clark's request for a judgment in her favor on the liability portion of her counterclaims due to Altercare's misconduct.

{¶11} Altercare appealed from the trial court's dismissal of its complaint against Clark. Clark then filed a notice of cross-appeal to challenge the court's refusal to grant her judgment on the liability portion of her counterclaims due to Altercare's misconduct. Yet, the record reflects that Clark never filed a merit brief in support of her cross-appeal. She only filed a brief in response to Altercare's merit brief and her responsive brief only addresses Altercare's appeal. Consequently, the record does not contain a cross-appellant's brief. "If an appellant fails to file the appellant's brief within the time provided by [App.R. 18], or within the time as extended, the court may dismiss the appeal." App.R. 18(C). Because Clark failed to file a brief in support of her cross-appeal, this Court dismisses the cross-appeal. *See id.* This matter, therefore, will proceed solely on Altercare's appeal from the trial court's dismissal of its complaint against Clark.

{¶12} Altercare's appeal is now before this Court and raises two assignments of error for our review. For ease of analysis, we combine the assignments of error.

II

Assignment of Error Number One

TRIAL COURT ABUSED ITS DISCRETION WHEN IT HELD THAT ALTERCARE FAILED TO PRESERVE ELECTRONICALLY STORED INFORMATION[.]

<u>Assignment of Error Number Two</u>

TRIAL COURT ABUSED ITS DISCRETION BY DISMISSING PLAINTIFF'S CLAIMS[.]

**{¶13}** In its assignments of error, Altercare argues that the trial court abused its discretion by granting Clark's motion for sanctions and dismissing its complaint. Specifically, it argues that the factors set forth in Civ.R. 37 do not justify a sanction and that dismissal was too harsh a sanction. We disagree.

**{¶14}** "A trial court has broad discretion when imposing discovery sanctions." *Nakoff v. Fairview General Hosp.*, 75 Ohio St.3d 254 (1996), syllabus. Consequently, "[t]his Court reviews a trial court's decision to impose sanctions for an abuse of discretion." *Rogers v. Credit Acceptance Corp.*, 9th Dist. No. 11CA010141, 2013-Ohio-1097, ¶ 8. "While dismissal with prejudice is the harshest of sanctions, this Court will not disturb the judgment of the trial court unless the 'degree of the sanction is disproportionate to the seriousness of the infraction under the facts of the case.'" *Morgan Adhesives Co., Inc. v. Datchuk*, 9th Dist. No. 19920, 2001 WL 7383, *3 (Jan. 3, 2001), quoting *Aydin Co. Exchange, Inc. v. Marting Realty*, 118 Ohio App.3d 274, 280 (9th Dist.1997). "Where the record does not indicate [that] failure to comply with discovery was due to involuntary inability, such as illness, rather than willfulness, bad faith or any other fault of the noncomplying party, a trial court does not abuse its discretion by dismissing the action pursuant to Civ.R. 37(B)(2)(c)." *Morgan Adhesives Co., Inc.* at *3, quoting *Aydin Co. Exchange, Inc.* at 279. "In reviewing the appropriateness of the trial court's sanction of dismissal, this court will not substitute its judgment for that of the trial court." *Aydin Co. Exchange, Inc.* at 280.

**{¶15}** Civ.R. 37 contains a provision that specifically pertains to ESI. That provision provides that:

Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system. The court may consider the following factors in determining whether to impose sanctions under this division:

(1) Whether and when any obligation to preserve the information was triggered;

(2) Whether the information was lost as a result of the routine alteration or deletion of information that attends the ordinary use of the system in issue;

(3) Whether the party intervened in a timely fashion to prevent the loss of information;

(4) Any steps taken to comply with any court order or party agreement requiring preservation of specific information;

(5) Any other facts relevant to its determination under this division.

Civ.R. 37(F). Altercare argues that Clark failed to demonstrate that sanctions were warranted under the foregoing factors. It further argues that the sanction of dismissal with prejudice was overly harsh given that the loss of Clark's computer was not due to its willfulness or bad faith.

{¶16} The trial court considered each of the Civ.R. 37(F) factors in its judgment entry and determined that the factors weighed in favor of sanctioning Altercare. The court found that there was no evidence that Clark's computer was lost as result of a routine, good faith operation. Because Clark's employment ended under contentious circumstances and Clark herself was an attorney, the court reasoned, it should have been reasonably foreseeable to Altercare "that litigation was probable and that the preservation of [Clark's] computer and its [ESI] would more than likely be necessary." Further, the court noted that Clark had specifically made a written request to Altercare on April 9, 2008, well before the suit even commenced, asking Altercare to preserve the ESI. Clark also requested the production of the ESI in her first set of discovery requests in April 2009. Nevertheless, Altercare took no action whatsoever to preserve Clark's computer before it allegedly crashed sometime in September 2009, eleven months after Altercare

filed suit against Clark. Altercare then apparently lost the computer, as it was never able to produce it.

{¶17} Clark testified at the August 2011 hearing about her computer use during her employment with Altercare. Clark described herself as a "very computer-dependent" person who used the CEO computer to document the vast majority of her work. In determining that the loss of the computer had prejudiced Clark's ability to defend against Altercare's suit, the court specifically found that:

> [e]xamples of prejudice include Ms. Clark's inability to fully prepare for her own deposition because she only had been able to save some of her documents while employed at Altercare. Ms. Clark lost various drafts of her employment contract which she needed to rebut Altercare's claims that [she] had misrepresented her skills and experience and thereby fraudulently induced Altercare to hire her as the nursing home [CEO]. Ms. Clark is unable to present documents that would corroborate her version of the hiring process, how her work was deemed satisfactory by various board members who provided her with complimentary emails, how she sent emails updating the board members including information regarding nursing home challenges that existed before she was hired, how she had managed some of those problems satisfactorily, and a whole myriad of claims which Clark outlined in [her] September 20, 2011 Motion for Sanctions.

The court wrote that, in spite of the extensive efforts expended to locate and retrieve Clark's computer, "Altercare simply cannot produce it and has no satisfactory explanation as to where it is or what happened to it." (Emphasis omitted.)

{¶18} Although the court found it "suspicious" that Clark's computer apparently crashed and then disappeared only a short while before Clark was to examine it, the court noted that it did not have enough evidence to conclude that Altercare had engaged in intentional misconduct. Nevertheless, the court found that "[t]he loss or destruction of this computer[,] if not intentional and malicious, is under all the facts and circumstances surrounding the case, the result of gross neglect." The court ultimately concluded that Altercare's failure to preserve the evidence was "so negligent and irresponsible" that a dismissal with prejudice was warranted. Having reviewed

the record, we cannot conclude that the trial court's decision to sanction Altercare and to dismiss with prejudice its case against Clark amounted to an abuse of discretion.

{¶19} The record reflects that a great deal of time was expended in the court below trying to identify the location of Clark's computer and to retrieve it for purposes of the litigation. Altercare, despite being formally requested to retain ESI, failed to preserve the ESI on Clark's computer. It then, absent any explanation, lost the computer; a conclusion that emerged only after several years' worth of attempts to locate it. The computer was in Altercare's sole custody and control at all relevant times. Altercare had the ability to preserve the computer and/or its contents, but failed to do so. Given Altercare's utter disregard for the preservation of evidence, we cannot conclude that the court erred by sanctioning Altercare. *See Morgan Adhesives Co. Inc.*, 2001 WL 7383, at *3, quoting *Aydin Co. Exchange, Inc.*, 118 Ohio App.3d at 279.

{¶20} As to the harshness of the sanction the court imposed, the record supports the conclusion that the absence of Clark's computer would have greatly hampered Clark's ability to defend herself against Altercare's suit. *Compare Transamerica Ins. Group v. Maytag, Inc.*, 99 Ohio App.3d 203, 205-207 (9th Dist.1994) (sanction of dismissal with prejudice constituted an abuse of discretion where there was no evidence of affirmative destruction and the failure to preserve the evidence did not render the afflicted party incapable of proving their case). Clark testified that she used her computer on a daily basis during her employment with Altercare and had saved a great number of important documents on it. The evidence on the computer potentially would have rebutted several of Altercare's claims against Clark, as discussed in the trial court's judgment entry. We cannot conclude that the degree of the sanction the court imposed was "disproportionate to the seriousness of the infraction under the facts of the case." *Morgan Adhesives Co., Inc.* at *3, quoting *Aydin Co. Exchange, Inc.* at 280.

{¶21} In sum, the trial court did not abuse its discretion by imposing the sanction of a dismissal with prejudice of Altercare's case against Clark. Altercare's arguments to the contrary lack merit. Therefore, Altercare's two assignments of error are overruled.

III

{¶22} Altercare's assignments of error are overruled. Clark's cross-appeal is dismissed due to her failure to file a brief in support of her appeal. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

SCOTT SALSBURY and POOJA ALAG BIRD, Attorneys at Law, for Appellant/Cross-Appellee.

CARYN M. GROEDEL, CHASTITY L. CHRISTY, and MATTHEW M. RIES, Attorneys at Law, for Appellee/Cross-Appellant.