{¶ 1} Plaintiff-Appellant/Cross-Appellee, Arrow Uniform Rental, L.P. ("Arrow"), appeals from the trial court's decision denying it leave to file its summary judgment motion one day late and from the trial court's decision that granted the motions for summary judgment of Defendants-Appellees/Cross-Appellants, Mark Longazel, Donna Longazel, and Keith Belkin (collectively referred to herein as "appellees" or "cross-appellants"). Mark Longazel, Donna Longazel, and Keith Belkin have all cross-appealed contending that the trial court abused its discretion by denying their respective motions for attorney's fees and costs for frivolous conduct. For the reasons that follow, we affirm the trial court's judgments.
 {¶ 2} Arrow commenced this action against appellees on December 1, 2006 advancing the following claims: fraudulent transfer (counts one and two); constructive trust (count three); piercing the corporate veil (count four); civil conspiracy (count five); and accounting (count six). Arrow advanced its claims based upon a default judgment it had obtained in January 2006 against MIA Transportation Services, Inc. ("MIA"). MIA was incorporated in 1998. According to the record, MIA was dissolved in March 2003. For that reason, MIA did not appear to defend against Arrow's subsequent claim for breach of contract at the arbitration and ensuing court action to affirm the arbitrator's award. *Page 4 
 {¶ 3} Mark Longazel was the owner of MIA as well as another company[1] that provided transportation services to the disabled. Although there is a cause of action to pierce the corporate veil, MIA is not a party to this action.
 {¶ 4} Mark Longazel, as Grantor, and Keith Belkin, as Trustee, [2]
executed the BSDR Trust on January 16, 2001. Donna Longazel, Mark Longazel's wife, and their children were named beneficiaries in the BSDR Trust. Certain distributions were made to Donna Longazel from the BSDR Trust.
 {¶ 5} The record indicates that on or before 2003, Mark Longazel was being investigated for medicaid fraud in connection with the operation of MIA. During this time frame, MIA and ACT made separate deposits into the BSDR Trust. The Trustee testified that the money was transferred in accordance with an agreement reached with the governmental authorities to make restitution related to the medicaid allegations. It is undisputed that MIA was a recipient of the medicaid funds under investigation. Arrow's expert acknowledged that the restitution payments from the BSDR Trust could, on that basis, be construed as a payment made to a creditor of MIA.
 {¶ 6} Arrow avers in its complaint that by 2003, Mark Longazel was "legally prohibited from continuing to own and operate MIA." Complaint at ¶ 11. *Page 5 
The assets of MIA and ACT were transferred to the BSDR Trust in 2003.[3] The BSDR Trust then sold the assets of MIA and ACT in March 2003 to a third party, [4] who, in turn, assumed outstanding payments on corporate vehicles. Arrow's witness testified that, if true, this would constitute consideration for the corporate assets. COA was to pay any monies due under the Asset Purchase Agreement to the BSDR Trust.[5] Mark Longazel and Keith Belkin testified that Mark Longazel made personal loans to COA and its owner, which were also being repaid to him through the BSDR Trust. Again, the testimony is not refuted despite the absence of a loan document.[6]
 {¶ 7} Trustee Belkin distributed funds as directed. No witnesses testified to any wrongdoing by Trustee Belkin, including Arrow's expert.[7] Disbursements were made, inter alia, to BSDR Trust beneficiaries and various creditors of MIA. *Page 6 
According to the record, there were no funds in the BSDR Trust when Arrow obtained its default judgment against MIA in January 2006.
 {¶ 8} In this action, Arrow contended that Mark Longazel improperly transferred all of his assets to "the BSDR Trust" as "part of an overall fraudulent plan to shield and hide [his] assets from his creditors including *** Arrow." Complaint at ¶ 9, 10. Although Arrow asserted claims for civil conspiracy and accounting against Keith Belkin as Trustee of The BSDR Trust, the BSDR Trust itself was not named as a party to this action.
 {¶ 9} Defendants all moved for summary judgment. Arrow sought and obtained leave to file its opposition brief by August 20, 2007. On August 20, 2007, Arrow sought an additional leave of two days in which to submit its opposition brief. Arrow filed its brief in opposition on August 21, 2007. The trial court then denied leave and struck Arrow's brief in opposition from the record. Each of the appellees' motions for summary judgment were granted. The trial court later denied Arrow's motion for reconsideration.
 {¶ 10} The Appellees/Cross-Appellants moved for attorney's fees and costs alleging frivolous conduct pursuant to R.C. 2323.51 and Civ. R. 11. Arrow opposed. The trial court denied the motions without a hearing.
 {¶ 11} The Appellees/Cross-Appellants voluntarily dismissed their remaining counterclaims, including claims for frivolous lawsuit, libel and *Page 7 
defamation, and the trial court amended its summary judgment orders to provide for "no just reason for delay." The parties have appealed as stated.
 {¶ 12} Additional facts will be addressed in connection with the assignment of error to which they pertain and construed as dictated by the applicable standard of review.
 ARROW'S APPEAL {¶ 13} Arrow's first assignment of error provides:
 {¶ 14} "I. The trial court erred and abused its discretion in denying leave for the plaintiff to file its brief in opposition to the defendants' summary judgment motions, and striking it."
 {¶ 15} Pursuant to Civ. R. 56(F), a party opposing a motion for summary judgment may obtain a continuance pursuant to Civ. R. 56(F) by submitting affidavits that state a factual basis and that provide sufficient reasons for the lack of supporting affidavits and the need for additional time to permit affidavits to be obtained or further discovery to be had. Gates Mills Investment Co. v. Pepper Pike (1978),59 Ohio App.2d 155, 168-169. A trial court has discretion to grant or deny a request for a continuance pursuant to Civ. R. 56(F), and its decision will not be overruled absent an abuse of discretion. Id. *Page 8 
 {¶ 16} Here, Arrow filed a general motion for extension of time in which to oppose the summary judgment motions, which would also be within the court's discretion to grant or deny. See Toledo v. Stuart (1983),11 Ohio App.3d 292.
 {¶ 17} Arrow's requests for extensions were limited to a small time frame. Although the trial court granted the first leave requested by Arrow, it denied Arrow's second request for a two-day extension of time. Arrow ultimately filed its opposition brief only one day out of rule. Arrow contends this ruling was an abuse of the trial court's discretion.
 {¶ 18} Even if it is assumed that the trial court's decision denying leave was an abuse of discretion, it would not alter the outcome for purposes of summary judgment in this case. Despite Arrow's opposition being stricken from the record, most, if not all, of the evidence upon which it was based was made part of the record by defendants' summary judgment motions and was required to be considered by the trial court. Civ. R. 56.
 {¶ 19} In urging reversal, Arrow cites the fundamental tenant that "courts should decide cases on the merits." However, Arrow's assumption that the trial court failed to consider the merits in rendering summary judgment is mistaken. A trial court may not simply grant an unopposed motion for summary judgment. The trial court must decide the matter on the merits by conducting a review of the record evidence and construing it in favor of the non-moving party, here *Page 9 
Arrow. Civ. R. 56.[8] As such, the case was necessarily resolved on the merits and not upon a mere procedural technicality. Furthermore, Arrow, in its second assignment of error, has fully briefed the issue of summary judgment on appeal where the standard of review requires us to review the record de novo, giving no deference to the trial court's judgment. For all these reasons, we find that any error in denying leave to file an opposition brief was harmless under the circumstances of this case. Accordingly, Assignment of Error I is overruled.
 {¶ 20} Arrow's second assignment of error provides:
 {¶ 21} "II. The trial court erred in granting the defendants' summary judgment motions."
 {¶ 22} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial.Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120. *Page 10 
 {¶ 23} We afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.
 {¶ 24} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ. R. 56(C).
 {¶ 25} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107; Civ. R. 56(C).
 {¶ 26} Having reviewed the record in its entirety and construing the evidence in a light most favorable to Arrow, there are no genuine issues of material fact on Arrow's claims against the defendants. On appeal, Arrow *Page 11 
addresses only its claims for fraudulent conveyance, piercing the corporate veil, and civil conspiracy.
A. Fraudulent Transfers.
 {¶ 27} Arrow advanced claims of fraudulent transfer pursuant to R.C. 1336.04(A)(1) and (2).
 {¶ 28} A claim for fraudulent transfer pursuant to R.C. 1336.04(A)(1) or (2) requires proof of the following:
 {¶ 29} "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 30} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 31} "(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 {¶ 32} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; *Page 12 
 {¶ 33} "(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."
 {¶ 34} R.C. 1336.04(B) provides:
 {¶ 35} "In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 36} "(1) Whether the transfer or obligation was to an insider;
 {¶ 37} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 38} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 39} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 40} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 41} "(6) Whether the debtor absconded;
 {¶ 42} "(7) Whether the debtor removed or concealed assets;
 {¶ 43} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; *Page 13 
 {¶ 44} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 45} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 46} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."
 {¶ 47} Primarily, we note that none of the defendants in this case were a "debtor" of Arrow. Rather, Arrow predicated its claims upon a judgment it received against MIA, a non-party to this action. There is no evidence in the record to indicate any interest in MIA by either Donna Longazel or Keith Belkin. Arrow obtained a default judgment against MIA in 2006. MIA was dissolved in 2003 and no longer existed at the time Arrow pursued and obtained that judgment. Arrow did not have a judgment against Mark Longazel, Donna Longazel, or Keith Belkin.
 {¶ 48} Arrow made no attempt to join any of these parties, nor did it attempt to pierce MIA's corporate veil in the arbitration or court actions where it ultimately obtained its 2006 judgment against MIA. In this case, however, Arrow advanced a claim to pierce the corporate veil of MIA and hold Mark Longazel personally liable for the default judgment it obtained against MIA. To *Page 14 
that extent, we shall proceed to examine the record for evidence of fraudulent conveyance.
 {¶ 49} Arrow maintains actual intent may be inferred under R.C. 1336.04(B)(1), (3), (4), (5), and (9).
 {¶ 50} The fact remains that the BSDR Trust was established in 2001 — five years before Arrow obtained its default judgment. There was a transfer from MIA into the BSDR Trust in 2003 for the purpose of paying restitution for alleged medicaid fraud involving MIA's business. MIA was closed in March 2003. Thereafter, its assets, along with the assets of ACT, were sold to third-party COA.
 {¶ 51} There is no evidence from which a reasonable mind could conclude that the transfers made by MIA into the BSDR Trust in 2003 were made with the intention of defrauding creditors of MIA, including Arrow, who only obtained a judgment against it after the corporation was dissolved. Likewise, there is no evidence that the subsequent deposit of monies into the BSDR Trust from COA were made for purposes of defrauding MIA's creditors. In fact, there is no dispute that the BSDR Trust did pay MIA creditors. The record also establishes that the payments COA made into the Trust were for the purposes of repaying personal loans Mark Longazel made to COA and its owner. By the time Arrow obtained its default judgment against MIA, the BSDR Trust had no funds. *Page 15 
 {¶ 52} No one was able to definitively state that any of the defendants did anything improper in making deposits into, disbursing funds, or receiving funds from the BSDR Trust. Arrow's expert did not opine that any of MIA's assets were fraudulently transferred. She merely concluded that the BSDR Trust at various times held certain proceeds that she attributed to MIA that would have been sufficient to satisfy the default judgment Arrow ultimately obtained in 2006. She did not opine as to the propriety of the distributions that were made from the BSDR Trust and could not pinpoint any wrongdoing by any of the defendants. Arrow's other witness generally testified that he believed there was an improper funneling of MIA's assets through the BSDR Trust, but could not articulate any factual basis to support his suspicions. There is insufficient evidence in the record to support the fraudulent conveyance claims, and the trial court properly granted summary judgment on them.
B. Piercing Corporate Veil.
 {¶ 53} Arrow attempted to pierce MIA's corporate veil and hold Mark Longazel personally liable for its debt to Arrow.
 {¶ 54} Corporate officers and shareholders are generally not liable for the debts of the corporation. However, "the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation *Page 16 
has no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." BelvedereCondominium Unit Owners' Assn. v. R.E. Roark Cos., 67 Ohio St.3d 274,1993-Ohio-119. The party seeking to pierce the corporate veil bears the burden of proof. Capital-Plus, Inc. v. Potter (June 5, 2001), Franklin App. No. 00AP-1353, citing Zimmerman v. Eagle Mtg. Corp. (1996),110 Ohio App.3d 762, 772, 675 N.E.2d 480.
 {¶ 55} Neither Belkin nor Donna Longazel were shareholders of MIA. Accordingly, they cannot be held liable for its debts through a corporate veil piercing. Therefore, this claim can only pertain to Mark Longazel.
 {¶ 56} Construing the evidence in a light most favorable to Arrow, it is sufficient to establish the first prong of the Belvedere test. Although there is testimony and evidence to indicate that MIA was operated as a separate entity, there is some testimony and evidence that Mark Longazel exercised a great degree of control over the corporation. In the absence of corporate documents or further testimony concerning the observance of corporate formalities, this prong should be resolved in Arrow's favor. *Page 17 
 {¶ 57} Conversely, there is insufficient evidence of the second prong of the Belvedere test. Accordingly, Arrow cannot sustain its effort to pierce MIA's corporate veil and hold Mark Longazel personally liable for the default judgment it obtained against MIA years after the company dissolved. The evidence shows that MIA's assets were sold. There is no indication that this was done for a fraudulent purpose. Arrow did not obtain its judgment against MIA until 2006, after the exhaustion of the BSDR Trust funds. By all accounts, other creditors of MIA were paid and, but for it being dissolved, MIA would have disputed the debt allegedly owed to Arrow. Although Arrow alleges that Mark Longazel and Trustee Belkin became aware of Arrow's claims prior to the exhaustion of the BSDR Trust funds, "there is no requirement that money be set aside in the possible event an adverse judgment might be rendered in the future."Capital-Plus, Inc., supra.
 {¶ 58} Arrow further complains that payments made to Longazel and his wife were fraudulent transfers sufficient to sustain this element. As set forth previously, the record evidence did not support these claims. Arrow's expert testified about various payments made by COA to the BSDR Trust that corresponded to disbursements made to the Longazels. The expert considered these payments related to COA's purchase of MIA's assets or payments on MIA's accounts receivable. However, both Mark Longazel and Trustee Belkin *Page 18 
explained that these reflected repayments of personal loans made by Mark Longazel to COA and its owner.
 {¶ 59} In response, Arrow believes an issue of fact lies due to the absence of actual documents reflecting these personal loans. The absence of loan documents does not create an issue of fact in the face of the undisputed testimony. E.g., Capital-Plus Inc., supra. (Although no loan documents existed, accounting documents established paper trail of the personal loan coupled with the testimony of the corporate owner and the accountant). In this case, Trustee Belkin provided a full accounting of the BSDR Trust and explanatory testimony relating to the disbursements. Summary judgment was appropriate on this claim.
C. Civil Conspiracy
 {¶ 60} Arrow asserts that the appellees participated in and were recipients of fraudulently transferred assets of MIA and, therefore, are liable to it for civil conspiracy.
 {¶ 61} "The tort of civil conspiracy is `"a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" Williams v.Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475, quoting Kenty v.Transamerica Premium Ins. Co. (1995), *Page 19 72 Ohio St.3d 415, 419, quoting LeFort v. Century 21-Maitland RealtyCo. (1987), 32 Ohio St.3d 121, 126. (Other citations omitted.)
 {¶ 62} "An underlying unlawful act is required before a civil conspiracy claim can succeed." Id., citing, Gosden v. Louis (1996),116 Ohio App.3d at 219. (Other citations omitted.) "The malice involved in the tort is `that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" Id., quoting Pickle v. Swinehart (1960), 170 Ohio St. 441,443; Gosden, 116 Ohio App.3d at 219.
 {¶ 63} There is insufficient evidence to create a genuine issue of material fact as Arrow's claim for civil conspiracy. There is no evidence that defendants acted in concert for a malicious purpose of injuring Arrow or of an underlying unlawful act. The evidence includes that the BSDR Trust was created for estate planning purposes or to hold the assets of Longazel's personal and corporate assets. The BSDR Trust was established in 2001, many years prior to entry of the default judgment upon which Arrow seeks to collect. None of the witnesses testified to any wrongdoing by any of the defendants. At most, one of Arrow's witnesses generally testified to his belief that there was an improper funneling of MIA's assets, but admitted he had no factual basis to support it. The trial court properly granted summary judgment on this claim.
 {¶ 64} Based on the foregoing, Assignment of Error II is overruled. *Page 20 
 CROSS-APPEALS {¶ 65} Appellees/Cross-Appellants challenge the trial court's orders that denied their motions for attorney's fees and costs without holding a hearing. All of the cross-assignments of error pertain to the same issues and will be addressed together for ease of discussion.
 {¶ 66} Belkin's cross-assignment of error provides:
 {¶ 67} "I. The trial court erred when the trial court denied Belkin's motion for reasonable attorney's fees and costs for frivolous conduct under Rule 11 of the Ohio Rules of Civil Procedure and Ohio Revised Code Section 2323.51."
 {¶ 68} The Longazel's cross-assignments of error provide:
 {¶ 69} "I. The trial court abused its discretion in denying defendants' Mark F. Longazel and Donna Longazel's motion for award of court costs, reasonable attorney fees and reasonable expenses."
 {¶ 70} "The trial court erred in not holding a hearing on cross-appellants' motion for award of court costs, reasonable attorney fees and reasonable expenses."
 {¶ 71} We cannot reverse a trial court's decision to deny or grant a motion for attorney's fees under R.C. 2323.51 unless there was an abuse of discretion. "The trial court's decision must be more than an error of law or judgment; its ruling must be so palpably and grossly violative of fact or logic that it evidences *Page 21 
not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" Beal v. Allen, Cuyahoga App. No. 79567, 2002-Ohio-4054, ¶ 78, quoting Nakoff v. Fairview Gen. Hosp.,75 Ohio St.3d 254, 256, 1996-Ohio-159.
 {¶ 72} Civ. R. 11 subjects pro se litigants and attorneys to sanctions for willful violations of the rule and provide, in part, as follows:
 {¶ 73} "The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney's fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted."
 {¶ 74} R.C. 2323.51 requires the court to hold a hearing before it can make an award of attorney's fees as a sanction for frivolous conduct, but the same is not required when the court, in its discretion, declines such an award. See First *Page 22 Place Bank v. Stamper, Cuyahoga App. No. 80259, 2002-Ohio-3109, ¶ 12 ("an
R.C. 2323.51 hearing is `mandatory only when sanctions are imposed and is not necessary when the court determines, upon consideration of the motion and in its discretion, that it lacks merit.'"); see, also,Beal, supra. Because the trial court denied sanctions, no hearing was necessary. Accordingly, the cross-assignment of error asserted by the Longazels on this ground is overruled.
 {¶ 75} Cross-Appellants contend that Arrow engaged in frivolous conduct by commencing this action. "Frivolous conduct is conduct of a party to a civil action or his or her representative that `obviously serves merely to harass or maliciously injure another party to the civil action or appeal' or `is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.'" Id. at ¶ 15, quoting R.C. 2323.51.
 {¶ 76} Cross-Appellants assert that Arrow's failure to produce any evidence sufficient to withstand summary judgment establishes frivolous conduct. This is not and should not be the law. The claims Arrow asserted against cross-appellants involved a rather convoluted set of facts, corporations, transfers, and disbursements. The record is devoid of documentation that would substantiate the testimony as to much of the corporate transactions. The record illustrates that MIA was a debtor of Arrow. MIA was owned by Mark Longazel, and its *Page 23 
assets were sold by the BSDR Trust, which made various disbursements, including to Keith Belkin for services and to Donna Longazel.
 {¶ 77} The facts necessary to ascertain the viability of Arrow's claims were not readily apparent from any pre-lawsuit documents. After complete discovery and partial briefing on summary judgment, the claims were ultimately resolved in favor of defendants. This, however, does not transform the filing of the complaint into frivolous conduct. We do not find that the trial court abused its discretion by denying Cross-Appellants' motions for attorney's fees without a hearing.
 {¶ 78} Given the abuse of discretion standard of review, our decision in Siemientkoski v. Moreland Homes, Inc., Cuyahoga App. No. 84758,2005-Ohio-515, is not in conflict despite the award of attorney's fees in that case.[9] The opposite issue is presented here, that being whether the trial court abused its discretion by denying motions for attorney's fees and costs. That issue was not before us inSiemientkoski, and there is no indication that we would have reversed the denial of attorney's fees for an abuse of discretion in that case had the trial court ruled otherwise. *Page 24 
 {¶ 79} The cross-assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees/cross-appellants recover from appellant/cross-appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., and ANN DYKE, J., CONCUR
[1] Assisted Care Transformation ("ACT"), which is not a party in this case.
[2] Sometimes referred to as "Trustee Belkin."
[3] While there is no documentation in the record of this fact, the unrefuted testimony is that the assets were transferred to the BSDR Trust.
[4] Central Ohio Ambulance ("COA").
[5] MIA, as a corporate entity, was no longer in existence.
[6] Mark Longazel testified that he absolutely personally loaned the money to COA, but he was unsure whether he could find the loan documentation, although he insisted it exists.
[7] One of Arrow's witnesses repeatedly said he believed Trustee Belkin advised Longazel not to pay Arrow, but he had no factual basis to support this supposition. This witness, who was unable to articulate whether such advice from an attorney to client was wrongful, simply testified that he was relying on his own counsel to advise him.
[8] We emphasize that Arrow's brief in opposition presented little additional evidence beyond what was already in the record by virtue of defendant's summary judgment motions.
[9] When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161; Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, 67; Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131. It logically follows that one court's exercise of discretion is not controlling of a subsequent court's exercise of its discretion in a different case. *Page 1