[Cite as *State v. Kasler*, 2013-Ohio-3850.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 13CA4 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| KELLY KASLER, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 08/30/13** |

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Jason A. Macke, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Patrick J. Lang, Athens City Law Director, and James K. Stanley, Athens City Prosecutor, Athens, Ohio, for Appellee.

_____

McFarland, P.J.

{¶1} Kelly Kasler appeals the decision of the Athens County Municipal Court denying her application for appointment of counsel. On appeal, Appellant raises only one assignment of error, contending that the trial court erred by denying her court-appointed counsel. Because we conclude that the trial court abused its discretion in denying Appellant's application for appointment of counsel, we sustain Appellant's sole assignment of error. Accordingly, the decision of the trial court is reversed

and this matter is remanded for further proceedings consistent with this opinion.

## FACTS

{¶2} Appellant, Kelly Kasler, is a twenty-one year old college student enrolled at Ohio University in Athens, Ohio. Appellant lives in Athens, Ohio, and shares an apartment with four roommates. On October 28, 2012, Appellant was arrested and charged with obstructing official business, in violation of R.C. 2921.31, and resisting arrest, in violation of section 13.04.09 of the Athens City Code, both second degree misdemeanors. Appellant appeared in court on October 29, 2012, entered a not guilty plea, and requested court-appointed counsel. Her father posted a cash bond on her behalf.

{¶3} The next day, on October 30, 2012, Appellant completed and filed a financial disclosure/affidavit of indigency form. Appellant listed her mailing address as her parents' home in Vandalia, Ohio, and listed her father, mother and sister as "other persons living in household." Under the income and employment section, she stated her gross monthly income was $400.00 and her employer as O'Charley's, and listed her total liquid assets as $150.00. The trial court denied Appellant's application the same day, noting on the form that it needed "household income + expenses."

Appellant filed a second form on November 6, 2012, providing the same address and household information, but this time stating her gross monthly income was $0 and noting that she only works during the summer when she is at home. The trial court again denied Appellant's application, noting that it "still need[ed] income and expenses."

{¶4} Appellant filed a third form on November 14, 2012, providing all of the same information, and also noting that her parents' income is $100,000, but that her parents were not helping her with any attorney fees, court costs or fines. The trial court again denied Appellant's application, making a notation of "Denied-Family income" on the form. Appellant filed a fourth and final form on November 21, 2012. On that form, Appellant listed her Athens apartment address and listed persons living in her household as herself and her four roommates. She listed her income as $0 and her total expenses as $775.00 a month. The trial court denied this application as well, noting on the application that it needed "family income and expenses."

{¶5} The Ohio Public Defender thereafter became involved, although the record is unclear as to how this came about. An assistant public defender appeared at a scheduled hearing to determine indigency on January 14, 2013. At the hearing, the assistant public defender argued that Appellant's parents

had no duty to support her under Ohio law and that as such, their income should be excluded when determining indigency. The trial court took testimony from Appellant and a transcript from the hearing was created.

{¶6} A review of the transcript indicates that the trial court obtained the following information from Appellant: 1) Appellant is a dependent on her parents' tax returns and does not file her own taxes; 2) Appellant is covered on her parents' health insurance; 3) Appellant's parents pay her tuition, room and board, and transfer money from her college account every month to pay her bills and rent; 4) Appellant pays for her own food; and 5) Appellant opted out of the student legal services coverage for Ohio University Students. Based upon this information, the trial court subsequently issued a written decision on January 17, 2013, denying Appellant's application for appointment of counsel.

{¶7} The Ohio Public Defender's office thereafter entered an appearance on behalf of Appellant on January 25, 2013, and filed a notice of appeal. In a hearing held on January 28, 2013, the trial court granted a stay of the proceedings pending the outcome of the appeal. Appellee then filed a motion to dismiss Appellant's appeal, arguing that the order denying appointment of counsel was not a final, appealable order. However, on March 14, 2013, this Court denied Appellee's motion to dismiss, holding the

order was final and appealable.  Thus, we now consider the sole assignment

of error set forth by Appellant.


ASSIGNMENT OF ERROR

"I.      THE TRIAL COURT ERRED BY DENYING APPOINTED
         COUNSEL TO DEFENDANT."

LEGAL ANALYSIS

{¶8} In her sole assignment of error, Appellant contends that the trial

court erred by denying her application for appointed counsel.  Appellant

contends that the trial court erroneously relied upon a definition of

household income found in 26 U.S.C. §36B (c)(3)(d)(2)(A), which is a

provision under the Internal Revenue Code, in determining Appellant was

not indigent and thus denying her application for court-appointed counsel.[1]

More specifically, Appellant contends that her parents' income should have

been excluded from her household income because they have no duty to

support her, as she is an adult.

{¶9} The State, in turn, argues that the trial court appropriately

consulted other authorities in determining the definition of household

income, as that term is not defined in Ohio Administrative Code Chapter 120

---

[1] The provision is actually contained in a section of the Internal Revenue Code entitled "Refundable credit for coverage under a qualified health plan."

or Revised Code Chapter 120, which govern the Ohio Public Defender

Commission, Public Defenders, and which set forth the standards for

indigency and indigency determinations.  The State further contends that the

trial court's determination with respect to Appellant's indigency should be

reviewed under an abuse of discretion standard.

{¶10} The Sixth Amendment to the United States Constitution, and

Section 10, Article 1 of the Ohio Constitution guarantee the right to

assistance of counsel in all criminal prosecutions that may result in jail

sentences. *State v. Wellman*, 37 Ohio St.2d 162, 171, 309 N.E.2d 915

(1974); citing *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006 (1972).

"The constitutionally protected right to the assistance of counsel is absolute

[and] absent a knowing and intelligent waiver, no person may be imprisoned

for any offense * * * unless he was represented by counsel at his trial." *State*

*v. Tymcio*, 42 Ohio St.2d 39, 43, 325 N.E.2d 556 (1975); citing *Argersinger*

at 37 and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963).

{¶11} As this Court has previously noted in *State v. Tackett*, 4th Dist.

No. 04CA12, 2005-Ohio-1437, ¶ 28:

> "The right to assistance of court-appointed counsel in criminal
>
> cases is a factual issue in Ohio that does not necessarily depend
>
> on the defendant's indigency or whether he or she should be

able to employ counsel, but on whether, in fact, the defendant is unable to employ counsel." Citing *State v. Tymcio* at 45; *State v. McLean*, 87 Ohio App.3d 392, 395, 622 N.E.2d 402 (1993)."

"Many factors, financial and otherwise, may impinge upon an accused's ability to obtain counsel, and these factors may vary from case to case." *Jackson v. Wickline*, 153 Ohio App.3d 743, 746, 2003-Ohio-4354, 795 N.E.2d 1248; citing *Tymcio* at 44;  see also, *Brook Park v. Kirsch*, 138 Ohio App.3d 741, 745, 742 N.E.2d 224.

{¶12} The determination of whether a criminal defendant is indigent and, thus, in need of appointed counsel is a matter within the sound discretion of the trial court. See *State v. Weaver*, 38 Ohio St.3d 160, 161, 527 N.E.2d 805 (1988). The determination of the trial court in this regard will not be reversed on appeal absent an abuse of discretion. Id.  We note that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *State v. Clark*, 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335 (1994); *State v. Moreland*, 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898 (1990); *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149 (1980).

{¶13} In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. See *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re Jane Doe 1,* 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991); *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). To show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 2003-Ohio-2181, 787 N.E.2d 631, ¶ 13; *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

{¶14} Section 5(A), Article IV, of the Ohio Constitution, authorizes the Supreme Court of Ohio to establish Rules of Superintendence. Ohio Superintendence R. 22 "Verification of indigency" provides as follows:

"[w]here required by law to appoint counsel to represent indigent defendants in cases for which the county will apply to the Ohio Public Defender Commission for reimbursement of costs, the court shall require the applicant to complete the financial disclosure form. The court shall follow rules

promulgated by the Commission pursuant to division (B)(1) of

section 120.03 of the Revised Code as guidelines to determine

indigency and standards of indigency."[2]

R.C. 120.03(B)(1) deals with standards of indigency and provides that

"the commission shall consider an indigent person to be an individual who at

the time his need is determined is unable to provide for the payment of an

attorney and other necessary expenses of representation."

{¶15} Additionally, Ohio Administrative Code, Section 120-1-03

"Standards of Indigency" states in part, as follows:

"The Ohio public defender commission's standards for

determining indigency status are promulgated pursuant to

sections 120.03 and 120.05 of the Revised Code. Further

considerations include *State vs. Tymcio* (1975), 42 Ohio St.2d.

39 and the Ohio supreme court rules of superintendence. *The*

*pivotal issue in determining indigency is not whether the*

*applicant ought to be able to employ counsel but whether the*

*applicant is, in fact, able to do so.*

---

[2] The State's brief points out that Athens County is not reimbursed by the Ohio Public Defender, but rather has a contract with the state public defender to provide legal services to indigent criminal defendants. We find this distinction to be immaterial to our analysis.

(A) Criteria: When any court is required by law to appoint counsel for any applicant asserting indigent status, the basic criteria for determining indigency status shall include:

(1) Wages and earnings from employment, unemployment compensation, workers compensation, child support pension/social security compensation, Ohio works first/temporary assistance to needy families (TANF) Program compensation, disability compensation, and all other similar forms of compensation/governmental assistance comprising household income;

(2) Other financial assets, including but not limited to available cash reserves in savings and checking account, stocks, bonds, certificate of deposit, or other liquid assets; other similar ownership or entitlement to available financial resources with which the applicant might hire legal counsel; but excluding property necessary to maintain employment;

(3) Consideration of the number and age of the applicant's dependents;

(4) Consideration of basic living costs, including housing rent and/or mortgage payments, child support actually paid, child

care expenses (for employed applicants only), health insurance, medical/dental expenses, Associated costs of caring for infirm family member, employment transportation costs, cost of fuel, food, telephone, utilities, taxes owed, credit cards/other loan payments and other similar basic costs of living;

(5) Consideration of court-imposed obligations, any bail/bond expenses for the particular offense at issue, and other similar costs associated with the particular legal proceeding.

(6) If the spouse of the applicant is the victim, the spouse's income shall not be included for the determination of indigency."  (Emphasis added).

{¶16} Finally, R.C. 120.05 "Determination of Indigency" provides that "[t]he determination of indigency shall be made by the state public defender, subject to review by the court."  Hence, the abuse of discretion standard of review discussed above.

{¶17} We conclude that a review of the trial court's decision indicates that the trial court, while mentioning the principles set forth in *Tymcio*, failed to actually apply those principles and as a result issued a decision that fails to comport with the spirit of the *Tymcio* decision.  The trial court appears to have limited its analysis to the issue of "household income,"

admittedly a factor to be considered when determining indigency, but which is undefined in the pertinent sections of the Revised and Administrative Codes discussed herein. Although consideration of household income is clearly a factor in the determination of indigency, it is not the sole consideration. Further, the record reflects that in considering household income, the trial court refused, despite the urging of the Ohio Public Defender, to take into consideration the fact that because Appellant was an adult, her parents had no legal duty to financially support her. In fact, the trial court went so far as to state in its decision that "there is no legal nexus between duty of support and household income." We disagree with the trial court's reasoning.

{¶18} Although mentioned above, we reiterate, "[t]he right to the assistance of court-appointed counsel in a criminal case turns upon the inability to obtain counsel. The entitlement depends, not upon whether the accused ought to be able to employ counsel, but whether he is in fact 'unable to employ counsel.' " *Tymcio*, supra, paragraph one of the syllabus. In fact, in a previous decision this Court noted that a defendant still has the right to appointed counsel "even upon a finding that he was not indigent if he was, in fact, actually unable to obtain counsel for another reason." *State v. Purnhagen*, 4th Dist. No. 93-CA-551, 1994 WL 59263, FN3; relying on *State*

*v. Tymcio* at ¶ 39. Further, the Eleventh District has noted the question of indigency is not always absolute. *State v. Pasqualone*, 11th Dist. No. 97-A-0034, 1999 WL 262174, *4 (stating that "[t]o a certain extent, we agree with appellant that indigency is not an absolute concept. It is entirely conceivable that a defendant may be indigent for one purpose, but not for another.")

{¶19} In fact, the *Tymcio* court expounded upon the issue of indigency, noting that the determination of indigency depends upon the nature of the particular case. *Tymcio* at 43. For example, we include the following reasoning from *Tymcio*, verbatim:

> "The obligation to provide counsel is often said to run to the 'indigent.' Generally speaking, such a statement is true, because undisputed indigence, and the inability for that reason alone to obtain counsel, is the major reason requiring the assistance of court-appointed counsel. In fact, the temptation is to say that where nonindigency can be factually found, the appointment of counsel by the court not only is not required, but may not be permitted.
>
> Such a rigid requirement would be arguable if indigency were judicially definable as an abstract term without regard to the circumstances of the particular case, and if indigency, as so

defined, were the only actual fact bearing on the inability to

obtain counsel in this and other cases. * * * But it is not."

*Tymcio* at 43-44. (Footnote omitted.).

Further, the Supreme Court of Ohio acknowledged in *Tymcio* that "[m]any

factors impinge upon a defendant's inability to obtain counsel, factors which

may differ greatly from case to case."  Id. at 44.  Ultimately, the *Tymcio*

court concluded that "[w]hen an accused is financially able, in whole or in

part, to obtain the assistance of counsel, but is unable to do so for whatever

reason, appointed counsel must be provided."[3]  Id. at 45.

{¶20} In the present case, although Appellant is a member of her

parents' household, which household income exceeds the limit for indigency

status and appointed counsel, Appellant represented to the trial court

repeatedly that her parents were not assisting her in employing counsel.  The

Ohio Public Defender's Office argues that the fact that Appellant's parents

had no legal duty to support her should have been taken into consideration

when determining Appellant's eligibility for court-appointed counsel.  We

agree.

{¶21} As argued by Appellant throughout these proceedings, R.C.

3119.86 provides that the duty of support to a child does not continue

---

[3] In reaching this conclusion, the Court also stated that "[i]n such a case, appropriate arrangements may be subsequently be made to recompense appointed counsel for legal services rendered."

beyond the child's eighteenth birthday unless certain conditions, none of which apply here, exist. In *State ex rel. Seigler v. Rone*, 42 Ohio St.2d 361, 362, 328 N.E.2d 811 (1975), a question regarding the defendant's indigency arose when the defendant requested a transcript to be prepared at state expense for purposes of appeal, when his brother had provided funds for retaining both trial and appellate counsel. The Supreme Court of Ohio determined that under those circumstances, and in light of the fact that none of the defendant's relatives "volunteered" to purchase a transcript for him, "the expense of providing a transcript, if one [was] needed, must be borne by the public." Id.

{¶22} In reaching this decision, the Court expressly considered the issue of duty of support as follows:

> "This assertion of nonindigency is based on the fact that appellee's brother provided the funds for retaining both trial and appellate counsel. However, this fact is immaterial. Here, we are concerned with appellee's ability to secure a transcript, not his brother's; a criminal defendant's brother has no legal duty to provide the accused with the monetary means to prosecute an appeal." Id.

Thus, based upon this reasoning, it appears that an adult criminal defendant's family member, whether a sibling or a parent, has no legal duty to provide the accused with the monetary means to defend himself or herself. As such, although Appellant's parents were funding her college education, they had no legal duty to do so, and likewise had no legal duty to employ counsel in her defense of this criminal matter.

{¶23} We believe this reasoning comports with the spirit of the *Tymcio* decision, which directs us to focus not on whether Appellant "ought" to be able to hire counsel, but rather to focus on Appellant's inability to employ counsel, taking into consideration the particular facts of her situation. It appears the trial court determined that Appellant "ought" to be able to hire counsel because her parents had the financial means to do so, and because they were otherwise supporting her. However, as the *Rone* court indicated, the question is not whether Appellant's parents have the ability to employ counsel, but rather, the question is whether Appellant has the ability. Based upon the information provided in Appellant's four applications for court appointed counsel, we believe she demonstrated her need and eligibility.

{¶24} In light of the foregoing, we conclude that the trial court abused its discretion in denying Appellant's application for court-appointed counsel.

In reaching this decision, much like the trial court below, we limit and narrowly tailor our holding to the facts of this particular case.  Therefore, we find Appellant's sole assignment of error to be meritorious.  Accordingly, the decision of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

**JUDGMENT REVERSED
AND CAUSE REMANDED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.: Concur in Judgment and Opinion.

For the Court,

BY:     _____
         Matthew W. McFarland
         Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**